**Greggory HUDSON, Appellant,**

v.

**STATE of Missouri, Respondent.**

No. WD 64725.

Missouri Court of Appeals,
Western District.

March 28, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 2006.

Application for Transfer Denied
May 30, 2006.

Phillip R. Gibson, Blue Springs, MO, Ellen Y. Suni, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, C.J., and LOWENSTEIN and HOWARD, JJ.

EDWIN H. SMITH, Chief Judge.

Greggory Hudson appeals from the order of the circuit court overruling, without issuing a show cause order or conducting an evidentiary hearing, his post-conviction motion for DNA testing, as authorized by § 547.035.[1] In 1996, the appellant was convicted, after a jury trial in the Circuit Court of Jackson County, of first-degree murder, in violation of § 565.020, and armed criminal action (ACA), in violation of § 571.015, for which he was sentenced to consecutive prison sentences, in the Missouri Department of Corrections, of life without parole and life, respectively. In his motion, the appellant sought to have DNA testing done on certain evidence concerning CW, who in 1997, was shot and killed in an unrelated incident and was characterized by the appellant as an "alternative perpetrator" of the offenses for which he was convicted and incarcerated in this case, to establish CW's DNA profile to compare to the profile of a cigarette butt found at the scene of the crimes.

The appellant raises two points on appeal. In Point I, he claims that the motion court clearly erred in overruling his § 547.035 post-conviction motion for DNA testing, without issuing a show cause order or conducting an evidentiary hearing, based on its finding that the motion and the files and records of the case conclusively showed that the appellant was not entitled to relief under the statute since he could not establish, as required by § 547.035.2(2), that the evidence upon which he requested DNA testing was "secured in relation to the crime," because "§ 547.035 R.S.Mo. does not require, and

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

should not require, that all of the evidence requested to be tested with DNA technology be secured in relation to the crime." In Point II, he claims that the motion court clearly erred in overruling his § 547.035 post-conviction motion for DNA testing, without issuing a show cause order or conducting an evidentiary hearing, based on its finding that the motion and the files and records of the case conclusively showed that the appellant was not entitled to relief under the statute since he could not establish, as required by § 547.035.2(5), that if exculpatory results were obtained from the requested DNA testing, a reasonable probability existed that he would not have been convicted, because:

> if the jury had been presented with the results of DNA testing identifying the person who smoked the cigarette butt as CW or (any other African–American male meeting the description offered by the sole eyewitness to the shooting) who had access to a blue Cadillac with Kansas License plates, there is a reasonable probability appellant would not have been convicted.

We affirm.

### Facts

On May 1, 1996, the appellant, after a jury trial, in the Circuit Court of Jackson County, Missouri, was convicted of first-degree murder and ACA and was sentenced to consecutive prison sentences of life without parole and life, respectively. The appellant appealed his convictions to this court. We affirmed his convictions on June 24, 1997, in *State v. Hudson*, 950 S.W.2d 543 (Mo.App.1997), summarizing the facts:

> On November 14, 1994, firefighters from Kansas City, Missouri, were sent to a truck fire located at Tenth and Olive. A deceased man, Roderick Mor-

gan, was discovered lying in the seat of a water department truck. He had been shot. Upon opening the truck door, police observed a spent shell casing fall from inside the truck.

Kansas City, Missouri, detectives interviewed Bruford Logan who lived near the scene. Mr. Logan reported that he saw a water department truck stop on his street and a blue Cadillac drive up behind it. A tall, slender, brown-skinned man exited the car and went to the water truck. Mr. Logan said he heard three or four shots and saw the man return to the Cadillac and leave.

Police obtained seven shell casings from the scene—three on the ground, two on the driver's seat, one on the victim and one on the truck's floorboard. A spent bullet was located in the right door interior. Detectives also lifted a latent palm print from the exterior left door above and forward of the chrome handle.

A search warrant was executed on November 18, 1994, at Mr. Hudson's home. Two shell casings were recovered from the driveway of the house. Mr. Hudson's brother, Claude Hudson, present at the search, explained that the casings were a result of Mr. Hudson's firing shots into the air.

Police analyzed the bullets and shell casings and concluded that the three bullets recovered from the victim and the bullet and casings taken from the truck as well as the two casings from Mr. Hudson's home were fired by the same .40 caliber weapon. Police also examined the latent palm print found on the truck and concluded that it was from Mr. Hudson's left palm. The state's fingerprint expert testified that rain would have washed away the print. Rain fell on November 13, 1994, the day before the murder, and the water truck

was stored in the outdoor lot exposed to the elements.

*Id.* at 545.

In addition to the shell casings and the palm print, Melanie Hart, a crime scene technician with the Kansas City, Missouri, Police Department collected a brown cigarette butt from the ground near where the shooter was standing when he shot the victim. Logan had told the police that the shooter had a cigarette in his mouth. DNA analysis of the cigarette butt, admitted at trial, established that the profile on the cigarette butt did not match either the profile of the victim or the profile of the appellant.

The appellant filed a timely Rule 29.15[2] motion for post-conviction relief, alleging ineffective assistance of counsel, which was denied by the motion court, without an evidentiary hearing. The appellant appealed the motion court's ruling to this court in *Hudson v. State,* 35 S.W.3d 876 (Mo.App. 2001). On January 23, 2001, we affirmed the motion court, pursuant to Rule 84.16(b). *Id.*

On March 13, 2003, the appellant filed a post-conviction motion for DNA testing, pursuant to § 547.035, requesting DNA testing of certain evidence concerning CW, who he characterized as an "alternative perpetrator" of the offenses for which the appellant was convicted and incarcerated. As noted in the facts, *supra,* in order to obtain a DNA profile for CW to compare to the profile obtained on the cigarette butt, he sought to test the blood on the clothing that CW was wearing when he was shot to death on May 1, 1997, or in the alternative, he requested DNA testing of the "bodily fluids" that were drawn from CW. As a further alternative, he sought

the DNA profile of CW that may have been available in the CODIS database of the Kansas Bureau of Investigation. The appellant alleged that the requested testing would demonstrate his innocence of the crimes for which he was in custody.

A show cause order was issued to the Prosecuting Attorney of Jackson County to appear on February 5, 2004, and show cause why the requested testing should not be issued. On January 21, 2004, after a written response by the prosecutor had been filed to the show cause order, the motion court withdrew its show cause order and denied the appellant's motion, without an evidentiary hearing.

On January 29, 2004, the appellant filed a motion for reconsideration by the motion court of its denial of his motion. On February 2, 2004, the court vacated its order overruling the appellant's motion and granted leave to the appellant to file an amended motion, which he filed on February 23, 2004. On October 6, 2004, the amended motion was denied without a show cause order being issued or an evidentiary hearing being conducted.

This appeal follows.

### Standard of Review

A motion for DNA testing, pursuant to § 547.035, is a post-conviction motion, governed by the rules of civil procedure. § 547.035.1; *Weeks v. State,* 140 S.W.3d 39, 43–44 (Mo. *banc* 2004). Section 547.035 does not set out a standard for appellate review of the motion court's rulings on such motions. However, because Rules 29.15 and 24.035 set out the applicable standard of review for other post-conviction motions, it is appropriate to apply that standard to the review of the denial of

---

**2.** All rule references are to the Missouri Rules of Criminal Procedure, 2004, unless otherwise indicated.

a post-conviction motion for DNA testing under § 547.035. *Weeks,* 140 S.W.3d at 43–44.

■ Our review of a denial of a post-conviction motion under Rules 29.15 and 24.035 is limited to a determination of whether the motion court's findings of fact and conclusions of law were clearly erroneous. *Id.* at 44. Hence, our review here is to determine whether the motion court's findings of fact and conclusions of law, in denying the appellant's motion, were clearly erroneous. *Id.* "The motion court's findings and conclusions are clearly erroneous only if, after the review of the record, the appellate court is left with the definite and firm impression that a mistake has been made." *Id.* (*quoting State v. Brown,* 998 S.W.2d 531, 550 (Mo. *banc* 1999)).

### I.

In Point I, the appellant claims that the motion court clearly erred in overruling his § 547.035 post-conviction motion for DNA testing, without issuing a show cause order or conducting an evidentiary hearing, based on its finding that the motion and the files and records of the case conclusively showed that the appellant was not entitled to relief under the statute since he could not establish, as required by § 547.035.2(2), that the evidence upon which he requested DNA testing was "secured in relation to the crime," because "§ 547.035 R.S.Mo. does not require, and should not require, that all of the evidence requested to be tested with DNA technology be secured in relation to the crime." We disagree.

Section 547.035.1 authorizes a prisoner in the custody of the Missouri Department of Corrections (DOC), who claims that DNA testing will prove that he is innocent of the crime for which he is imprisoned, to file in the sentencing court a post-convic-

tion motion for DNA testing. In such a motion, the movant, under oath, is required to allege facts demonstrating that:

(1) there is evidence upon which DNA testing can be conducted; and

(2) the evidence was secured in relation to the crime; and

(3) the evidence was not previously tested by the movant because:

(a) the technology for the testing was not reasonably available to the movant at the time of the trial;

(b) neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or

(c) the evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial; and

(4) identity was an issue in the trial; and

(5) a reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

§ 547.035.2; *Snowdell v. State,* 90 S.W.3d 512, 514 (Mo.App.2002). Upon the filing of the motion, the court is required to issue an order to the prosecutor to show cause why the motion should not be granted unless: "(1) It appears from the motion that the movant is not entitled to relief; or (2) The court finds that the files and records of the case conclusively show that the movant is not entitled to relief." § 547.035.4. Hence, if a show cause order does not issue, the motion is, in effect, denied without a hearing.

Even if a show cause order is issued, the motion court, after considering the prosecutor's response to the show cause order, does not have to conduct a hearing if it "finds that the motion and the files and

records of the case conclusively show that the movant is not entitled to relief." § 547.035.6. If a hearing is conducted, the motion court shall order appropriate testing if the court finds:

(1) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing; and

(2) That movant is entitled to relief.

§ 547.035.7. To show that he is entitled to relief, under § 547.035, the movant has the "burden of proving the allegations of the motion, which must be as outlined in § 547.035.2." *Matney v. State,* 110 S.W.3d 872, 876 (Mo.App.2003).

Here, the motion court overruled the appellant's amended motion, without issuing a show cause order or conducting an evidentiary hearing, finding that the "motion and the files and records of the case conclusively show[ed] that the [appellant] [was] not entitled to relief," under § 547.035. The court stated two bases for its finding:

1. The clothing worn by [CW] which Movant requests this Court to order DNA testing was not evidence secured in relation to the crime for which Movant was convicted, as contemplated by § 547.035 R.S.Mo.

2. Even if this Court were to order DNA testing on the clothing worn by [CW], and then match that DNA profile with that of the DNA profile developed from the cigarette paper found at the crime scene, Movant has failed to demonstrate that the result would lead to a reasonable probability that the Movant would not have been convicted of the crime charged.

The appellant attacks the first basis in this point and the second basis in Point II. If the motion court was correct in overruling the appellant's amended motion, without issuing a show cause order or conducting an evidentiary hearing, on either basis, we must affirm.

In his § 547.035 post-conviction motion, the appellant requested DNA testing of certain evidence concerning CW, whom he characterized as an "alternative perpetrator" of the offenses for which the appellant was convicted and incarcerated. Specifically, he sought to test the blood on the clothing that CW was wearing when he was shot to death on May 1, 1997, and which was in the custody of the Wyandotte County, Kansas, Sheriff's Department, to obtain a genetic profile for CW. In the alternative, he requested DNA testing of the "bodily fluids" that were drawn from CW, which were in the custody of the Bethany Hospital in Kansas City, Kansas. As a further alternative, he sought the DNA profile of CW that "may be available" in the CODIS database maintained by the Kansas Bureau of Investigation. The appellant alleged that this "[f]orensic DNA testing [would] demonstrate [his] innocence of the crimes for which he [was] in custody."

The appellant alleged in his amended motion that in obtaining CW's genetic profile he could demonstrate his innocence in that it would corroborate his alibi defense at trial. Although the appellant did not testify at trial, through other witnesses he tried to establish that he was with relatives at the time of the shooting. He further alleged in his motion that comparing CW's genetic profile to the DNA test results obtained in the case regarding the cigarette butt found at the scene of the crime would show that CW was at the scene and would allow him to argue other circumstances, other than the test result, to show that CW was the "more likely suspect than [the appellant]."

In requiring in § 547.035.2(2) that the evidence sought·to be tested be "secured in relation to the crime," it is clear that relief under § 547.035 is restricted to evidence that existed at the time of the crime and was subject to forensic DNA testing. *See State v. Tyler*, 103 S.W.3d 245, 248–49 (Mo.App.2003) (holding that the movant's failure to identify in his motion "any specific evidence collected in the investigation of the present case that could properly be tested for DNA," was sufficient for the motion court to deny the motion without issuing a show cause order or conducting a hearing). In other words, as the State contends in its brief, § 547.035 was not intended as a procedure for considering "newly discovered evidence," as the appellant seeks to do here.

The appellant does not dispute the fact that the evidence on which he now seeks DNA testing was not secured in relation to the crimes of which he was convicted, murder in the first degree and ACA. It is undisputed that the evidence, on which he seeks DNA testing, was not secured in relation to the crimes for which he is presently in the custody of the DOC and on which he is claiming his innocence, and was not available for DNA testing at the time of trial, but was secured some three years later in an unrelated incident.

Despite the express language of § 547.035.2(2), requiring that a motion for post-conviction DNA testing allege, *inter alia*, facts demonstrating that the evidence sought to be tested was "secured in relation to the crime," the appellant claims in this point that "§ 547.035 R.S.Mo. does not require, and should not require, that all of the evidence requested to be tested with DNA technology be secured in relation to the crime." In arguing against the application of the obvious requirement of the statute, the appellant contends: "As 'DNA testing' requires comparison of one genetic

profile to another in order to identify a perpetrator of a crime, comparisons to profiles developed from biological material not seized in connection with the crime are sometimes necessary in order to effectuate the legislative purpose of 547.035." Essentially, what he is contending is that because DNA testing, in order to identify a perpetrator of a crime, necessarily requires comparison of genetic profiles, the statute must be interpreted as authorizing implicitly post-conviction DNA testing of newly discovered evidence for the purpose of comparing it to results of DNA testing that was done on evidence that was, in fact, secured in relation to the case. We disagree.

The issue presented necessarily requires us to interpret § 547.035.2(2). In interpreting statutes, our purpose is to ascertain the intent of the legislature, giving the language used its plain and ordinary meaning. *Preston v. State*, 33 S.W.3d 574, 578 (Mo.App.2000).

> The courts are without authority to read into a statute a legislative intent which is contrary to the intent made evident by giving the language employed in the statute its plain and ordinary meaning. When the legislative intent cannot be ascertained from the language of the statute, by giving it its plain and ordinary meaning, the statute is considered ambiguous and only then can the rules of statutory construction be applied.

*Id.* at 578–79 (internal citations omitted).

Giving the language of § 547.035.2(2) its plain and ordinary meaning, it is clear that the legislature intended to limit post-conviction DNA testing, pursuant to § 547.035, to evidence that was secured in relation to the crime, but was not tested.

> The statute allowing for post-conviction DNA testing embodies the legislature's balancing of competing interests. There is, on one hand, a legitimate concern

with the need for finality of a conviction. On the other hand, there rests real concern that DNA technology could produce exonerating results. The legislature has struck a balance and decided to allow for post-conviction testing, but only under limited circumstances.

*State v. Kinder,* 122 S.W.3d 624, 631–32 (Mo.App.2003). Limiting the statute's reach to DNA testing may be "because the reliability of such tests has been established." *Phillips v. State,* 178 S.W.3d 679, 682 (Mo.App.2005). Limiting the statute to "evidence secured in relation to the crime" in the case, clearly suggests that the legislature did not intend for the statute to apply to new evidence that might tend to show the defendant's innocence, requiring a new trial. Rather, it shows that the legislature did not want an innocent person to be convicted on evidence that would have rendered a different result if only it had been DNA tested. There is nothing in the language of the statute that would suggest that the legislature intended to extend its reach to authorize the testing of newly discovered evidence, even for the sole purpose of comparing the results to DNA testing that was done in the case to establish the identity of the perpetrator, as the appellant contends.

We would agree with the appellant that DNA testing, as a tool in determining the identity of the perpetrator, presupposes a comparison of the defendant's genetic profile and the genetic profile of other evidence in the case. Otherwise, of what relevance would such evidence be in determining whether the defendant was the perpetrator? However, in contending as the appellant does, that we must read into the statute that the legislature intended to extend the reach of § 547.035 so as to authorize the testing of newly discovered evidence that relates to identifying a possible "alternative perpetrator," based on the appellant's "comparator" argument, he is overlooking the fact that if the evidence secured in relation to the crime is DNA tested, as in this case, a comparison is done. Hence, the statute does not require the reading urged by the appellant so as to allow the requisite comparison in determining the identity of the perpetrator. As written, the statute does allow the necessary comparison of genetic profiles, but by its express terms limits it to evidence secured in relation to the crime, whether it is considered initial evidence or comparator evidence, in the vernacular of the appellant.

In addition to claiming that § 547.035 "does not require . . . that all of the evidence requested to be tested with DNA technology be secured in relation to the crime," the appellant claims that it "should not [so] require." Essentially, the appellant urges us to ignore the requirements of § 547.035, in that the legislature did not know what it was doing when it required therein that the evidence sought to be tested was "secured in relation to the case," stating in his brief:

> The precursor of § 547.035 was initially adopted by the Missouri Supreme Court Rule 29.17, and the General Assembly in effect adopted that Rule and codified it by enacting §§ 547.035 and 547.037. *Unfortunately, those adopting the statute and rule were apparently not intimately familiar with the processes of DNA testing.* The statute is written as if DNA testing is a unitary event.

(Emphasis added.) In other words, he asks us to decide his case based on what the law should be in his eyes, not what it actually is. Of course, the appellant's belief as to what the law should be is of no consequence. It is the General Assembly's prerogative as to what the law should be. *In Interest of K.C.M.,* 85 S.W.3d 682, 694 (Mo.App.2002) (overruled on other

grounds in *In Interest of M.D.R.*, 124 S.W.3d 469 (Mo. *banc* 2004)). We are not permitted by judicial *fiat* to change the law to what we believe it should be. *Id.*

■ Here, DNA testing was done on the cigarette butt found at the scene of the shooting and the results compared to the genetic profile of the appellant, which did not show a match. The issue of CW being a possible alternative perpetrator was never raised in the case. This possibility did not come to mind until years after the appellant was convicted. Hence, the comparison that the appellant seeks by his motion, contrary to § 547.035.2(2), involves DNA testing of evidence that was in no way secured in relation to the crimes for which he seeks DNA testing to show his innocence such that the motion court, pursuant to § 547.035.4, was justified in denying the appellant's motion without issuing a show cause order or conducting an evidentiary hearing.

For the reasons stated, the motion court's findings and conclusions, denying the appellant's § 547.035 post-conviction motion for DNA testing, for the failure of the appellant's motion to allege any facts that would establish that the evidence sought to be DNA tested was "secured in relation to the crimes" in this case, were not clearly erroneous.

Point denied.

## II.

■ Even if the appellant could show that the motion court was not justified in overruling his post-conviction motion for DNA testing, without issuing a show cause order or conducting an evidentiary hearing, on the first basis found by the court for overruling the motion, as discussed in Point I, *supra*, the court was still justified in so ruling on the second basis stated for overruling the motion, which the appellant attacks in Point II. In Point II, he claims that the motion court clearly erred in overruling his § 547.035 post-conviction motion for DNA testing, without issuing a show cause order or conducting an evidentiary hearing, based on its finding that the motion and the files and records of the case conclusively showed that the appellant was not entitled to relief under the statute since he could not establish, as required by § 547.035.2(5), that if exculpatory results were obtained from the requested DNA testing, a reasonable probability existed that he would not have been convicted, because:

> if the jury had been presented with the results of DNA testing identifying the person who smoked the cigarette butt as CW or (any other African–American male meeting the description offered by the sole eyewitness to the shooting) who had access to a blue Cadillac with Kansas License plates, there is a reasonable probability appellant would not have been convicted.

We disagree.

By his motion, the appellant sought to establish the genetic profile of CW to compare with the DNA results from the testing of the cigarette butt found at the scene, which were admitted at trial, to establish that CW was at the scene, which he contends would allow him to argue other circumstances, not part of the test results, that would connect CW to the shooting and would demonstrate that he, not the appellant, was the likely shooter. As to the cigarette butt, the State's eyewitness, Logan, testified that he could not say whether he saw the shooter "light up," but he did testify: "I know he had a cigarette in his mouth when he came back from that water truck." With respect to the other circumstances, he testified that the shooter was "kind of tall and slender and kind of brown-skinned. I really didn't pay too much attention to him." He further testi-

fied that the shooter was "[his] size or a little—maybe could have been a little taller than me or something like that." He also testified that he saw the shooter pull up behind the water department truck in a blue Cadillac bearing Kansas license plates. The appellant contends that while he is an African American, he is neither tall nor slender, and that although he owned, at the time of the shooting, a blue Cadillac with Kansas plates, it did not have a brown vinyl top, as Logan stated in his statement to the police, but had other unique identifying features, which were not mentioned by Logan.

As noted, *supra*, the cigarette butt, which was secured in relation to the case, was tested and the results were admitted at trial. The jury, in convicting the appellant of murder and ACA, knew full well that the DNA profile found on the cigarette butt did not match the DNA profile of the appellant or the victim. The appellant's trial counsel referred to it in his opening statement and then argued the fact in his closing argument. In closing argument, he argued: "The scientific evidence ... positively said that cigarette was not smoked or handled by the decedent and it was not smoked or handled by this individual, the defendant. If the murderer smoked that cigarette, it couldn't have been him, was not him. That's what the evidence is." Thus, as the State contends, in convicting the appellant, the jury was, obviously, not concerned that some third person had smoked the cigarette in question.

In contending as he does in this point, the appellant is assuming that the jury would have found that the person who smoked the cigarette in question had to be the shooter. However, in convicting the appellant, it is clear that the jury did not agree with that proposition. This is logical given Logan's testimony. Logan never

testified that he saw the shooter throw his cigarette down in the location where the cigarette butt was found—near the water department truck. He testified that he could not say whether he ever saw him "light up," but was sure that he had it in his mouth when he was walking back to his Cadillac after the shooting. His testimony would suggest that the cigarette butt found near the water truck was not the shooter's because he still had it in his mouth when he walked away from the truck. In addition, there is nothing in the record from which to infer that the cigarette butt was discarded at or near the time of the shooting. The forensic expert, Hart, who picked up the cigarette butt that was tested, testified that: "Nobody told me where a cigarette was." She simply picked up the only butt she could find. This all leads to the conclusion that the cigarette in the shooter's mouth, as he returned to his Cadillac, was not the cigarette butt found at the scene near the water department truck where the shooting took place.

Contrary to the appellant's argument as to the significance of establishing that CW's DNA profile was on the cigarette butt, the State's theory of the case never excluded the fact that some third party, CW or anybody else, may have been at the scene of the crime smoking a cigarette that was discarded there. Consequently, it is easy to see why the jury was not convinced at trial by the defense that the State's failure to match the DNA profile of the cigarette butt to the appellant was fatal to the State's case.

As noted, *supra*, Logan, who lived up the street from the scene of the crime, testified for the State at trial that he saw a Kansas City, Missouri, Water Department truck stop on his street and a blue Cadillac pull up behind it. He next saw what he described at trial as a tall, slender, brown-

skinned man exit the Cadillac and approach the truck. He then heard three or four shots and saw the man return to the Cadillac and leave the scene. The State introduced at trial seven shell casings found at the scene—three on the ground, two on the driver's seat of the truck, one on the victim, and one on the truck's floorboard, and one spent bullet found in the right door interior. The State introduced evidence that they matched two shell casings found at the appellant's house, which his brother testified resulted from the appellant's firing shots into the air. The State also introduced evidence showing that a latent palm print found on the door of the victim's truck matched that of the appellant. The State's expert testified that the print would have been washed away by rain. The State's evidence was that it rained the day before the murder and the truck was exposed to the elements. The State also introduced evidence that the appellant was an African American and drove a blue Cadillac with Kansas plates. In light of the record, we fail to see how the fact that post-conviction DNA testing, to establish the DNA profile of CW, might possibly show that at some point in time he was smoking a cigarette that he discarded at or near the crime scene would change the outcome of the appellant's trial. In other words, it is not the "silver bullet" needed for the appellant to be entitled to relief under §§ 547.035 and 547.037.

In addition to the anticipated results of the requested DNA testing linking CW to the cigarette butt, the appellant, in contending that a reasonable probability existed for believing that the result of his case would have been different, but for the lack of the requested post-conviction testing, contends that we should consider the fact that CW matched the description of the shooter given by Logan, that he also owned a blue Cadillac with Kansas plates, and that he had a motive to kill the victim.

In that regard, the appellant points out that the blue Cadillac described by Logan to the police had a brown vinyl top and that his did not. However, the record of the trial clearly shows that he never testified that the Cadillac had a brown vinyl top. That comes from his statement to the police, which was never admitted at trial. Interestingly enough, while the appellant is more than willing to stray from the record to make his point about the Cadillac, he fails to point out that in that same statement to the police, Logan stated that the shooter was a black male, "5'6", 140–150 lbs., medium build," which is contrary to the "tall, slender" characterization of which the appellant makes a great deal in arguing his innocence.

In addition to asking us to consider things outside the record in determining whether the outcome of the appellant's case would have been different had the DNA profile of the cigarette butt been linked to a named individual, he also asks us, in a back-door manner, to consider that his trial counsel was deficient in several respects in an attempt to discredit the State's incriminating evidence, discussed, *supra*, stating in the facts portion of his brief:

> Appellant advised the motion court that the state's case against him was extremely weak and would have been perceived as such by the jury if his trial counsel had conducted a proper investigation and presentation of the evidence that the investigation yielded. Appellant's allegations of ineffectiveness of his counsel will not be repeated herein, but the Court's attention is invited to that portion of the Legal File detailing these allegations.

However, a determination of entitlement to § 547.035 relief is expressly limited solely to the impact of the "exculpatory results" of the DNA testing requested—in

this case, matching CW's DNA profile to the DNA profile found on the cigarette butt.

The additional evidence and circumstances outside the record that the appellant asks us to consider, in finding that a different result would have occurred in his case, do not constitute "exculpatory results" of the DNA testing itself. Rather, it is evidence that he would like to argue from the exculpatory results of the requested DNA testing, assuming a match was obtained between the DNA profiles of CW and the cigarette butt, and then weighed against the incriminating evidence that was presented at trial by the State. Clearly, the statute does not allow anything but the test results to be considered in determining whether there would have been a different result in the appellant's case. It does not allow for the consideration of the "other evidence" the appellant desires to develop from the test results and consideration of how the record would have been, but for trial counsel's alleged deficiencies. Obviously, the appellant is attempting to cobble together a case of innocence, for purposes of § 547.035, using a hybrid procedure not recognized by § 547.035, by combining procedural aspects used in cases of newly discovered evidence and Rule 29.15 proceedings for post-conviction relief for ineffective assistance of counsel.

For the reasons stated, the motion court's findings and conclusions, denying the appellant's § 547.035 post-conviction motion for DNA testing, for the failure of the appellant's motion to allege any facts that would establish that a reasonable probability existed that the appellant would not have been convicted if the DNA testing requested showed that CW's DNA profile matched the DNA profile of the cigarette butt, were not clearly erroneous.

Point denied.

## Conclusion

The order of the motion court, overruling, without the issuance of a show cause order or conducting an evidentiary hearing, the appellant's post-conviction motion for DNA testing, pursuant to § 547.035, is affirmed.

LOWENSTEIN and HOWARD, JJ., concur.