

# In the Missouri Court of Appeals
# Eastern District

### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED103288 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| v. | ) | 22951-02354-01 |
| | ) | |
| ARDELL FIELDS, | ) | Honorable Steven R. Ohmer |
| | ) | |
| Appellant. | ) | Filed: July 19, 2016 |

Ardell Fields ("Movant") is incarcerated for a rape he claims he did not commit. In his quest to be exonerated, Movant pursues post-conviction DNA testing, pursuant to Section 547.035.[1] Movant appeals from the motion court's judgment, after an evidentiary hearing, denying his post-conviction motion for DNA testing. We affirm.

## BACKGROUND

In April 1996, Movant was convicted, after a jury trial in the Circuit Court of the City of St. Louis, of forcible rape, resisting arrest, and third degree assault. Movant was sentenced to a term of life imprisonment for the forcible rape conviction, a term of 10 years of imprisonment for the resisting arrest conviction, and a term of one year of imprisonment for the third degree assault conviction, all terms to run consecutively. Previously, this court affirmed Movant's

---

[1] All statutory references are to RSMo Cum. Sup. 2014, unless otherwise indicated.

convictions on direct appeal, State v. Fields, 948 S.W.2d 201 (Mo. App. E.D. 1997), as well as Movant's motion for post-conviction relief under Rule 29.15, Fields v. State, 991 S.W.2d 213 (Mo. App. E.D. 1999).

In July 2012, Movant filed a *pro se* post-conviction motion for DNA testing, pursuant to Section 547.035, asserting his innocence. After appointed counsel filed an amended motion, the motion court denied Movant's prayer for relief without an evidentiary hearing. Thereafter, on appeal, this court reversed the motion court's holding and remanded the matter for an evidentiary hearing. See Fields v. State, 425 S.W.3d 215 (Mo. App. E.D. 2014).

On remand, the motion court conducted an evidentiary hearing upon Movant's post-conviction motion for forensic DNA testing. During the evidentiary hearing, the motion court was presented with evidence and the testimony of three witnesses; (1) Donna Becherer ("Becherer"), a forty year veteran of the St. Louis Metropolitan Police Department's crime laboratory; (2) Terri Johnson, Movant's trial counsel ("Trial Counsel") and former employee of the Missouri State Public Defender; and (3) Movant. The litigants stipulated that there existed evidence secured in relation to the underlying crime which DNA testing could be conducted upon; specifically, Victim's jeans, Victim's underwear, Victim's shirt, Movant's shirt, Movant's pants, Movant's underwear, and swabs from Victim's rape kit procured during her examination at the hospital.

Subsequently, the motion court issued its judgment, overruling Movant's post-conviction motion for forensic DNA testing, concluding, *inter alia*, that, at the time of Movant's trial, DNA testing technology was reasonably available to Movant and Trial Counsel, and the election to forgo DNA testing was a matter of trial strategy.

This appeal now follows.

**DISCUSSION**

Movant submits two points on appeal. First, Movant asserts the trial court clearly erred in denying his motion for post-conviction DNA testing, in that the trial court administered an "objective" test regarding the availability of DNA testing technology rather than a "subjective" test, in violation of Section 547.035.2(3)(a).

Second, Movant maintains the trial court clearly erred in denying his motion for post-conviction DNA testing premised upon Movant's failure to satisfy 547.035.2(5). Movant claims the trial court's finding was against the weight of the evidence, in that there existed a reasonable probability that exculpatory evidence secured by DNA testing would have exonerated Movant.

As discussed, infra, we find Point I dispositive and need not reach Point II.

*Standard of Review*

A motion for DNA testing, pursuant to Section 547.035, is a post-conviction motion, governed by that standard set forth under Rules 24.035 and 29.15. Weeks v. State, 140 S.W.3d 39, 43-44 (Mo. banc 2004). As such, appellate review of a post-conviction motion is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. State v. Ruff, 256 S.W.3d 55, 56 (Mo. banc 2008) ("Denial of a post-conviction motion for DNA testing is reviewed to determine whether the motion court's findings of fact and conclusions of law were clearly erroneous."). Inasmuch as we presume the motion court's findings are correct, this court deems a motion court's findings of fact and conclusions of law clearly erroneous only if a full review of the record leaves us with a definite and firm impression that a mistake has been made. Mallow v. State, 439 S.W.3d 764, 768 (Mo. banc 2014).

*Analysis*

For individuals in the custody of Missouri's Department of Corrections seeking exoneration, Section 547.035 prescribes a statutory construct to file a post-conviction motion for forensic DNA testing. See Section 547.035.1; see also Hudson v. State, 190 S.W.3d 434, 438 (Mo. App. W.D. 2006). Pursuant to Section 547.035.2, upon the filing of a post-conviction motion for forensic DNA testing, an evidentiary hearing shall be afforded to a movant if the motion incorporates specific enumerated information. State v. Kinder, 122 S.W.3d 624, 629 (Mo. App. E.D. 2003). Particularly, the motion must allege facts demonstrating, by a preponderance of the evidence, the following:

> (1) There is evidence upon which DNA testing can be conducted; and
> (2) The evidence was secured in relation to the crime; and
> (3) The evidence was not previously tested by the movant because:
>> (a) The technology for the testing was not reasonably available to the movant at the time of the trial;
>> (b) Neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or
>> (c) The evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial; and
> (4) Identity was an issue in the trial; and
> (5) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

Section 547.035.2.

Thereafter, the prosecutor will be ordered to show cause as to why the motion shall be denied unless it appears from the motion that a movant is not entitled to relief or the court determines the file and records of the case conclusively show that a movant is not entitled to relief. See Section 547.035.4; Kinder, 122 S.W.3d at 630; see also Hudson, 190 S.W.3d at 438-39 ("Even if a show cause order is issued, the motion court, after considering the prosecutor's response to the show cause order, does not have to conduct a hearing if it finds that the motion and the files and records of the case conclusively show that the movant is not entitled to relief.")

(internal citations and quotation marks omitted).  However, if an evidentiary hearing is granted and conducted, the motion court shall order the appropriate testing if the motion court concludes:

> (1) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing; and
> (2) That movant is entitled to relief.

Section 547.035.7; see also Hudson, 190 S.W.3d at 439.  Nevertheless, the movant still bears the burden of proving, by a preponderance of the evidence, the allegations of the motion, including each and every element of Section 547.035.2.  See Matney v. State, 110 S.W.3d 872, 876 (Mo. App. S.D. 2003); State v. Waters, 221 S.W.3d 416, 418 (Mo. App. W.D. 2006) ("Each of subsections 1-5, on the other hand, is connected by 'and,' and, therefore, each must be satisfied.").

In the instant matter, prior to the evidentiary hearing conducted upon Movant's motion, the parties stipulated and did not dispute Movant's motion satisfied elements (1), (2), and (4) of Section 547.035.2.  As such, during Movant's evidentiary hearing, elements (3) and (5) of Section 547.035.2 were specifically at issue.  Those same elements form the nucleus of Movant's dual points on appeal.

Insomuch as this court concludes the trial court did not err in adjudging Movant failed to satisfy element (3) of Section 547.035.2, Movant's Point I is dispositive, and we elect not to address Movant's Point II.  See Waters, 221 S.W.3d at 418 ("Each of subsections 1-5, on the other hand, is connected by 'and,' and, therefore, each must be satisfied.").

**Point I:  Element (3) of Section 547.035.2**

In his first point on appeal, Movant asserts the trial court clearly erred, *inter alia*, in adjudging Movant failed to satisfy prong (a) of element (3) of Section 547.035.2, in that the trial court administered an "objective" test regarding the availability of DNA testing technology

5

rather than a "subjective" test. Specifically, Movant avers the trial court inappropriately determined Movant failed to meet Section 547.035.2(3)(a) because DNA testing technology was not *reasonably available to Movant or Trial Counsel*, even though DNA testing was available and had been utilized in the jurisdiction of the City of St. Louis since 1991. Moreover, Movant claims the election not to request and conduct DNA testing at the time of Movant's trial could not have been a matter of trial strategy because neither Movant nor Trial Counsel was aware of DNA testing technology at the time of Movant's trial and there is no evidence to support the trial court's finding that this was, indeed, trial strategy.

"Section 547.035.2(3) requires Movant to allege facts that demonstrate that the evidence was not previously tested by him because: (a) the technology for the testing was not reasonably available to the movant at the time of the trial; (b) neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or (c) the evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial." Snowdell v. State, 90 S.W.3d 512, 515 (Mo. App. E.D. 2002); see also Section 547.035.2(3). Hence, "[t]o be entitled to post-conviction DNA testing, a movant must allege facts demonstrating one of the three alternative justifications set out in the statute as to why he or she did not previously test the evidence." Kinder, 122 S.W.3d at 630 (citing Section 547.035.2(3)).

On appeal, prongs (b) and (c) of element (3) of Section 547.035.2 are not specifically contested by Movant. Nevertheless, for purposes of comprehension and analysis this court elects to analyze all three prongs of element (3) of Section 547.035.2, beginning first with prongs (b) and (c) before returning to prong (a).

> ***Prong (b): Both Movant and Trial Counsel were aware of the existence of the evidence at the time of Appellant's trial***

6

During the evidentiary hearing, Movant and Trial Counsel both admitted they had received the Lab Report listing the items seized as evidence. Said Lab Report delineated that evidence which Movant now seeks to have tested for DNA. Specifically, said evidence, which Movant seeks to have tested for DNA and which was demarcated in the Lab Report, includes Victim's jeans, Victim's underwear, Victim's shirt, Movant's shirt, Movant's pants, Movant's underwear, and swabs from Victim's rape kit procured during her examination at the hospital. Consequently, both Movant and Trial Counsel were aware, at the time of Movant's trial, of the existence of the evidence Movant now seeks DNA testing upon.

Movant, therefore, cannot satisfy prong (b) of element (3) of Section 547.035.2.

***Prong (c): The evidence was available to both Movant and Trial Counsel at the time of Movant's trial.***

It is undisputed the clothing evidence—Victim's jeans, Victim's underwear, Victim's shirt, Movant's shirt, Movant's pants, and Movant's underwear—sought to be tested for DNA by Movant, were admitted as exhibits during Movant's trial. Accordingly, there exists no rational argument to refute the availability of this evidence as to both Movant and Trial Counsel at the time of Movant's trial.

Further, the swabs from Victim's rape kit were, likewise, available to both Movant and Trial Counsel at the time of Movant's Trial. As noted, <u>supra</u>, the Lab Report expressly indicated that a rape kit had been acquired and the Lab Report was available to both Movant and Trial Counsel. Thus, evidence collected in connection with Victim's rape kit was available, at the time of Movant's trial, as to both Movant and Trial Counsel.

Movant, therefore, cannot satisfy prong (c) of element (3) of Section 547.035.2.

***Prong (a): The technology for the DNA testing was reasonably available to the Movant at the time of Movant's trial.***

7

Under prong (a) of Section 547.035.2(3), a movant must demonstrate "the technology for the testing was not *reasonably available to the movant*" at the time of trial. Weeks, 140 S.W.3d at 47 (quoting Section 547.035.2(3)(a)) (emphasis in original). According to the Supreme Court of Missouri, "the test is a *subjective* one, subject to a reasonable *availability* standard, not a question of objective scientific feasibility." Weeks, 140 S.W.3d at 47 (emphasis in original). Appropriately, upon a motion for post-conviction forensic DNA testing, our courts are instructed to examine that which was "reasonably available" to the movant at the time of movant's trial, subject to a reasonable availability standard. Id. at 48 ("The legislature did not choose to so severely restrict the impact of the statute, or to set a specific limiting date.").

In overruling Movant's motion and concluding DNA testing was available to Movant and Trial Counsel at the time of Movant's trial in April 1996, the motion court found, in operable part, as follows:

> At Movant's Evidentiary Hearing on March 27, 2015, Criminalist Becherer from the St. Louis Metropolitan Police Department Crime Laboratory, testified that DNA testing in criminal cases has been available as part of criminal investigations in the City of St. Louis since around 1991. Ms. Becherer was a primary party in setting up the DNA lab for St. Louis Police Department. Ms. Becherer testified that DNA testing of evidence in criminal cases was utilized in criminal investigations throughout 1995 and 1996 in the City of St. Louis court cases investigated by the St. Louis Metropolitan Police Department. Ms. Becherer stated that during the mid-1990's, the St. Louis Metropolitan Police Department Crime Laboratory's primarily conducted DNA analysis at the request of the detectives investigating criminal offenses. Ms. Becherer further stated, however, that during the mid-1990's, the St. Louis Police Crime Laboratory would conduct DNA analysis of evidence seized as part of criminal investigations for crimes which occurred in the City of St. Louis at the request of prosecutors and defense attorneys as well. Ms. Becherer stated that no court order was required to accompany a request to conduct such DNA analysis.
>
> Ms. Becherer testified further that DNA testing was not requested by any party in the case against Movant. DNA testing would have been tested on items seized as part of the criminal investigation in Movant's case if requested the police, by the Circuit Attorney's Office, or by the defense attorney.

8

Ms. Becherer further testified that her laboratory was not accredited in DNA examination until 1997, although they were doing DNA analysis prior to accreditation. She testified presumptive testing in Movant's case did not test positive for seminal fluid. Her microscopic examination of slides made from the swabs in the sexual assault kit did not reveal sperm cells. She did detect blood on clothing from Movant and the victim but did not [perform] DNA testing of that blood. She also agreed modern STR testing is much more sensitive than the technology then used.

Terri Johnson, Movant's trial counsel, testified on March 27, 2015, that she was employed by the Missouri State Public Defender's Office in the 1990's. Ms. Johnson testified that she was familiar with DNA analysis at the time of Movant's trial. Ms. Johnson testified she tried numerous cases, both before and after Movant's case, in which DNA evidence was utilized. Ms. Johnson acknowledged that she had received the lab report in Movant's case and that she would have provided a copy of the lab report to Movant prior to trial. Although Ms. Johnson did not have an independent recollection of the meetings with Movant in 1995 and 1996, she did testify that it was her practice to review items such as lab reports and police reports with her client prior to proceeding with a criminal trial.

Ms. Johnson testified that the defense at Movant's trial focused on an argument of misidentification. Ms. Johnson testified that during the time of Movant's trial, the Public Defender's Office's main strategy in cases involving incriminating DNA evidence was to attack the reliability of the DNA testing. As a result, the Public Defender's Office did not commonly make their own request for DNA testing in cases.

***

Ms. Becherer clearly established that DNA testing had been in use by the St. Louis Metropolitan Police Department for a number of years prior to the incident for which Movant was arrested. While the precise tests have evolved since 1996, Ms. Becherer's testimony clearly established that DNA testing technology was available and in common use in the City of St. Louis at the time of Movant's trial. Movant fails to meet option (a) [of Section 547.035.2]. Furthermore, the St. Louis Police Department Crime Lab would have conducted DNA analysis on the items seized in connection to the investigation of the crime for which Movant was arrested and charged had any party, including Movant, simply made the request. Movant's attorney did not request said testing for reasons of trial strategy. Her defense was misidentification and any positive DNA results would negate that defense and leave her with a defense of attacking the testing itself. This Court has high respect for trial counsel and her professional judgment and finds her credible.

9

On appeal, Movant contends the trial court's findings regarding (1) the reasonable availability of DNA testing technology as to Movant and Trial Counsel and (2) the decision to forgo DNA testing as matter of trial strategy were erroneous and without evidentiary support. This court finds the aforementioned findings and conclusions by the trial court to be accurate and not clearly erroneous.

First, at the time of Movant's trial, Becherer testified that she had testified as a witness in eighteen (18) separate criminal cases, commenced in the jurisdiction of the City of St. Louis, regarding DNA testing and analysis she performed in the course and scope of her employment in the crime laboratory of the St. Louis Police Department. Beyond those eighteen separate criminal cases wherein Becherer was called as a witness, Becherer also testified that at the time of Movant's trial she had conducted DNA on a "lot more" than those eighteen cases. Indisputably, DNA testing technology was reasonably available in the jurisdiction of the City of St. Louis at the time of Movant's trial.

Regardless of the reasonable availability of DNA testing technology within the jurisdiction of the City of St. Louis, Movant, nevertheless, maintains that DNA testing was not reasonably available *to Movant or Trial Counsel*, in that Trial Counsel could not recall the onset of her DNA testing technology knowledge.[2] In support thereof, Movant directs this court's attention to Weeks.

In Weeks, our Supreme Court reversed the judgment of the trial court denying the movant's post-conviction motion for forensic DNA testing because the movant "provided sufficient supporting evidence to show[] that DNA testing was not reasonably available to him at

---

[2] With an acute appreciation and recognition of the swelling caseloads of this State's prosecutors and public defenders alike, this court notes that resolution of this matter could have been performed more swiftly had counsel composed "Notes to File" indicating discussions with one's client and internal strategy. Such a practice could assist in alleviating—or more quickly resolve—post-conviction motions in general.

the time of his plea." Weeks, 140 S.W.3d at 48. Such "sufficient supporting evidence" included: (1) an affidavit of the former executive director of the Southeast Missouri Regional Crime Laboratory ("SEMO") testifying that SEMO "did not conduct any DNA testing in 1992, . . .had no equipment with which to do so[,]" and that SEMO "did not issue its first DNA report until September 1995" – three years after the movant's guilty plea was procured in 1992; and (2) an affidavit of the movant's trial counsel stating he "did not know of any local laboratories that performed DNA testing in 1992." Id. Thus, as discussed, supra, in interpreting Section 547.035.2(3)(a), our Supreme Court, held "the test is a *subjective* one, subject to a reasonable *availability* standard, not a question of objective scientific feasibility." Id. (emphasis in original).

Here, similar "sufficient supporting evidence" does not exist. To the contrary, there exists ample evidence DNA testing technology was available and, in fact, frequently utilized in the jurisdiction of the City of St. Louis at the time of Movant's trial. Trial Counsel's inability to unequivocally recollect her cognizance of DNA testing does not mechanically defeat the subjective but "subject to *reasonable availability*" standard set forth in Weeks. See, e.g., Hudson v. State, 270 S.W.3d 464, 468-69 (Mo. App. S.D. 2008) (affirming the trial court's denial of the movant's post-conviction motion for forensic DNA testing without an evidentiary hearing because "nothing in the record . . . prevented trial counsel or movant from having an independent DNA examination of the hair samples as they existed at the time prior to trial"). Additionally, Trial Counsel's indeterminate recollection of her knowledge of DNA testing is not the equivalent of a trial counsel unequivocally testifying as to his or her lack of knowledge of the availability of DNA testing technology as in Weeks.

11

Second, assuming, *arguendo*, DNA testing technology was not reasonably available to Movant at the time of Movant's trial, Movant still fails to satisfy prong (a) of element (3) of Section 547.035.2, in that the abstention of DNA testing was a matter of trial strategy.

During the evidentiary hearing, Trial Counsel testified in following manner on direct examination:

> **Q [Attorney for Movant]:** In this case, to the best of your recollection what was your trial strategy?
> **A [Trial Counsel]:** I have no recollection. From what you have – from what I have been able to glean, I'm sure my strategy would have been some other dude did it, which was the [Public Defenders Office's] vernacular at the time.
> **Q:** Mistaken identity by the complaining witness?
> **A:** Mistake identity, yes.
> **Q:** It was never consent?
> **A:** No.
>
> ***
>
> **Q:** Okay. Now, prior to this case, had you had any experience with DNA analysis in any of your criminal cases?
> **A:** I had experience with DNA, which is why I was assigned this outside rapist case, but that would have been in 1999. I don't know when my first DNA case would have been.
> **Q:** All right. And do you recall [Movant] ever saying anything to you like, hey, we've got to gen DNA testing or anything like that?
> **A:** I don't recall.
> **Q:** Okay. And –
> **A:** I apologize. I just have no memory of this.
> **Q:** Okay. So if you had known about the existence of DNA testing, would you have sought it in this case?
> **A:** Part of my weakness as an attorney is I was a public defender for a very long time. I took more of a duck and cover approach in many cases. I might have been afraid to have sealed the caulk – or put the last nail in the coffin, but I don't know because I have no memory. Any I don't know at what point – I heard what Donna [Becherer] testified to earlier, but at that point I don't know what that we were seeking out DNA. I know that if we – if a case came into the office and had DNA, then we would have sought expert help in reading those results. I don't know at that point if we –
>
> What I'm saying is, is I don't know that I would have called Donna Becherer and said, 'Hey, run DNA on my guy.' I might have tried to get private DNA run somewhere, but I don't know if it was available in 1995, 1996. I'm just fuzzy as –

you know, it was all starting to come to fruition around that time that it was, you know, becoming more used.

Thereafter, on cross-examination, Trial Counsel testified as follows:

> **Q [Attorney for State]:** I want to take make sure – you mentioned a duck and cover approach. You didn't mean that you were afraid of exploring different types of evidence, did you?
> **A [Trial Counsel]:** No. But, you know, when you put a client on the stand, you always wanted them on and off pretty quickly before something bad happened. But I – I would have been reluctant to –I certainly would have been reluctant to call somebody on your [the State's] side to have them examine evidence.
> **Q:** So it was a strategy call on your part; would that be fair to say?
> **A:** Yes. Except that I have no memory of any strategy in this case.
>
> ***
>
> **Q:** Yes. As a defense attorney, you – would it be fair to say you would much rather go into a stranger on stranger rape case with no biological evidence connecting your client with the victim?
> **A:** That's very fair to say.
>
> ***
>
> **Q:** Okay. Would it be fair to say that if you – if DNA testing were to be conducted and DNA would have linked your client to the victim in the case, that you would make the stranger on stranger rape case significantly more difficult for a defense attorney to defend?
> **A:** Yes.

Although we agree with Movant that Trial Counsel appeared equivocal at times as to the trial strategy implemented in Movant's case, Trial Counsel's actual trial strategy was exposed during cross-examination. Said trial strategy was that which Trial Counsel testified—"I'm sure my strategy would have been some other dude did it" or "duck and cover." Securing DNA testing would have conceivably vanquished that trial strategy. See, e.g., Matney, 110 S.W.3d at 876-77 (holding movant was not entitled to post-conviction DNA testing, in part, because the decision of trial counsel to forgo DNA testing was reasonable trial strategy in light of the fact

13

said evidence was likely not exculpatory). After a review of the record, we harbor no belief the motion court erred in finding Trial Counsel's strategy was the "defense of misidentification[.]"

Movant, therefore, cannot satisfy prong (a) of element (3) of Section 547.035.2. Consequently, in finding Movant cannot satisfy either prongs (a), (b), or (c) of element (3) of Section 547.035.2, we find the trial court did not clearly err in denying Movant's post-conviction motion for DNA testing. See Waters, 221 S.W.3d at 418 ("Each of subsections 1-5, on the other hand, is connected by 'and,' and, therefore, each must be satisfied."); Kinder, 122 S.W.3d at 630 ("To be entitled to post-conviction DNA testing, a movant must allege facts demonstrating one of the three alternative justifications set out in the statute as to why he or she did not previously test the evidence.").

Finally, Movant insists the denial of his post-conviction motion for forensic DNA "violates" the purpose of the Section 547.035. Particularly, Movant contends the "intransigence" of the motion court prohibits inmates from securing that which is bestowed through the enactment of Section 547.035—the opportunity to conduct DNA testing for potentially exculpatory evidence. Certainly, it cannot be denied Movant has received considerable due process, as this is the fourth appellate review by this court. However, this court is mindful of the proposition of one of our Country's forefathers, Benjamin Franklin: "That it is better a hundred guilty persons should escape than one innocent person should suffer." Nevertheless, the court's duty is to construe and apply the laws as written by the legislature, and any argument as to the alleged unfairness of construction of a statute as written, the difficulty in obtaining relief occasioned by the wording of a statute, or the policy ramifications thereof should be addressed to the legislative and executive branches of government. Kavanagh v. Dyer O'Hare Hauling Co., 189 S.W.2d 157, 160 (Mo. App. 1945); see, e.g., Hudson, 190 S.W.3d at 441 (Mo. App. W.D.

14

2006) (finding the plain language of Section 547.035 does not apply to "new evidence"); <u>Kinder</u>, 122 S.W.3d at 632 ("The legislature has decided only three reasons might justify a defendant's failure to test the evidence at his original trial. . . . The legislature has not evidenced any intent to otherwise allow for testing.  If a defendant chose not to test evidence for a reason other than those statutorily denominated, the statute affords no relief.").

## CONCLUSION

For the foregoing reasons, the judgment of the motion court is affirmed.

_____
Lisa P. Page, Judge

Sherri B. Sullivan, P.J. and
Kurt S. Odenwald, J., concur.