**Edgar Calvin MARSHALL, III, Plaintiff/Respondent,**

v.

**MARSHALL FARMS, INC.; Lucky Seven Partnership, a Missouri General Partnership; Sally Ann Marshall; Mary T. Marshall Whitehead; Lucia Hillenmeyer; James Marshall; and Madeline Haynie, Defendants,**

**Marshall Farms, Inc.; and Lucky Seven Partnership, a Missouri General Partnership, Appellants.**

No. SD 30440.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 10, 2010.

Rehearing Denied Dec. 1, 2010.

Application for Transfer Denied March 29, 2011.

John W. Grimm, Cape Girardeau, MO, for Appellant.

Richard G. Steele and Kristi N. Hoff, Cape Girardeau, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Marshall Farms, Inc. ("Marshall Farms") and Lucky Seven Partnership ("Lucky Seven") appeal the trial court's order granting summary judgment for Edgar Calvin Marshall, III ("Husband") for conversion of Husband's income withheld and distributed pursuant to a Florida Amended Income Deduction Order ("Florida Order"). We reverse and remand in part and affirm in part.

**Factual and Procedural History**

Marshall Farms and Lucky Seven ("Appellants") are family farming operations with their principal places of business in Mississippi County, Missouri. Marshall Farms is a Missouri corporation and Husband had been an employee of Marshall Farms for more than twenty years in 2007. He was also a shareholder and director of Marshall Farms. Lucky Seven is a Missouri general partnership. In 2007, Husband was a general partner in Lucky Seven.

Husband was formerly married to Sally Ann Marshall ("Wife"), a defendant in the underlying petition, but not a party to this appeal. In September 2006, Wife filed for divorce in Palm Beach County, Florida. The Florida trial court denied Husband's motion to dismiss for lack of personal jurisdiction and Husband appealed to the appropriate Florida court. While the Florida action was pending, the Florida trial court awarded alimony[1] and attorney's fees to Wife. On October 24, 2007, a

Florida circuit court issued an amended income deduction order. Subsequently, the Florida Order was sent by Wife's attorney to Marshall Farms and Lucky Seven notifying them to deduct from Husband's income a percentage to apply against alimony arrearages, as determined by the Florida trial court. As of July 13, 2007, the alimony arrearage was $61,900.00, and continued to accrue at $6,000.00 per month. The Florida Order directed:

> Upon receipt of this Order, any Payor (employer/income provider of the Obligor) shall deduct from all income due and payable to the Obligor the sum(s) of the Obligor's regular support obligation, plus an additional 20 percent or more of the periodic amount specified in the order....

The Florida Order defined "income" as: "Any form of payment to an individual regardless of the source including, but not limited to, wages, salaries, commissions and bonuses ... dividends, royalties or trust accounts...."

On November 17, 2007, Marshall Farms held a joint annual meeting of shareholders and directors and declared a dividend of $79,000.00, to be paid to each of the seven shareholders at a rate of $877.78 per share. The first $10,000.00 of each shareholder's distribution would be paid in November 2007. Marshall Farms also passed a resolution authorizing compliance with the Florida Order. Marshall Farms sent Husband's November 2007 dividend—$10,000.00—to the State of Florida. Marshall Farms admitted Husband's dividend was not due to him as a result of employment with Marshall Farms.

---

1. Maintenance in Missouri was formerly referred to as "alimony." Alimony is a term still utilized in Florida.

The partners of Lucky Seven also met on November 17, 2007, and voted to send all of Husband's partnership distributions to the State of Florida as directed by the Florida Order. On or about November 19, 2007, the partnership sent $4,800.00 of Husband's partnership distribution to the State of Florida Disbursement Unit, and an additional $1,150.00, on or about December 19, 2007. Lucky Seven admitted that distributions to Husband were not payable as a result of his employment with Lucky Seven.

On January 17, 2008, Husband filed a five-count petition in the Circuit Court of Mississippi County, Missouri, seeking injunctive relief, among other claims. On October 23, 2008, Husband filed an amended petition adding a count against both Marshall Farms and Lucky Seven for conversion.

On December 23, 2008, Husband filed a motion for summary judgment as to the conversion count. On February 6, 2009, Appellants filed a memorandum in opposition. On February 10, 2009, the trial court granted summary judgment for Husband. Husband voluntarily dismissed the remaining counts of his petition. This appeal followed.

Appellants contend the trial court erred in granting summary judgment on Husband's claim for conversion because it was contrary to the law in that Missouri law compelled Marshall Farms and Lucky Seven, as Husband's "employers," to comply with the Florida Order and withhold Husband's corporate dividends and partnership distributions to satisfy the terms of the Florida Order. Husband contends Marshall Farms was only required to comply with the Florida Order with regard to Husband's salary and wages and that Lucky Seven, as a partnership in which he was a general partner, was not Husband's employer pursuant to section 454.932 [2] (the "foreign withholding statute") and thus was not authorized to send Husband's partnership distributions to the State of Florida.

In analyzing whether the trial court erred in granting summary judgment in favor of Husband, we must determine: (1) were Marshall Farms and Lucky Seven Husband's "employers" as the term is used in section 454.932; and (2) did section 454.934 require Husband's employers to withhold and distribute to the State of Florida any income due to him even if Husband's income was not earned as a wage or salary.

## Standard of Review

When considering appeals for summary judgment, this Court should review the record in the light most favorable to the non-moving party, viewing all reasonable inferences in favor of the non-moving party. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). This Court's review is essentially *de novo*. *Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.*

"Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." *Foster v. St. Louis County*, 239 S.W.3d 599, 601 (Mo. banc 2007). The movant has the burden to demonstrate both elements. *Cochran v. Travelers Ins. Co.*, 284 S.W.3d 666, 669 (Mo.App. S.D.2009). Both parties in this case stipulate as to the underlying

**2.** All references to statutes are to RSMo 2000, unless otherwise indicated.

facts, but Appellants challenge Husband's right to judgment as a matter of law.

### Relevant Statutes

The following statutes contained in the Uniform Interstate Family Support Act ("UIFSA") are relevant to our analysis.[3] The foreign withholding statute—section 454.932 provides:

An income withholding order issued in another state may be sent to the person or entity defined as the *obligor's employer* under section 452.350, RSMo, or section 454.505 without first filing a petition or comparable pleading or registering the order with a tribunal of this state.

(Emphasis added.)

Section 454.934(b) mandates "[t]he employer shall treat an income withholding order issued in another state which appears regular on its face as if it had been issued by a tribunal of this state." Section 454.934(c)–(5) provides that except as provided in sections 454.934(d) and 454.936, "the employer shall withhold and distribute the funds as directed in the withholding order by complying with the terms of the order, as applicable, that specify . . . the amount of periodic payments of arrears and interest on arrears, stated as sums certain."

### Analysis

#### I.  Marshall Farms

It is undisputed that Marshall Farms was Husband's employer when it received the Florida Order. Husband had received a regular paycheck and an annual W–2 from Marshall Farms for over twenty years. Husband acknowledges in his brief that Marshall Farms was his employer and that Marshall Farms has no liability for payment made from his *wages* pursuant to the Florida Order. Thus, Marshall Farms qualifies as Husband's "employer" as the term is used in section 454.932.

Next, we must determine whether Marshall Farms, as Husband's employer, was required, under the foreign withholding statute, to withhold and distribute Husband's corporate dividends not earned as a result of his employment. Appellants argue Husband only has a claim for conversion against Marshall Farms made through an inferential conclusion, unsupported by citation or Missouri law. Without any supporting authority, Husband reasons that since

an unregistered out of state support order may only be sent to an obligor's *employer*, it follows then that the only income which can be collected under this provision is that income which is derived as a result of the employer-employee relationship for the services rendered by the employees for the employer.

In closely examining the language in the foreign withholding statute, and in the context of the UIFSA, we agree with Appellants that this is a misguided conclusion.

The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of a statute. *State ex rel. Young v. Wood,* 254 S.W.3d 871, 872–73 (Mo. banc 2008). If a statute's language is unambiguous, a court must give effect to the legislature's chosen language. *State ex rel. Young,* 254 S.W.3d at 873. " 'A court may not add words by implication to a statute that is clear and unambiguous.' " *Id.* at 873 (quoting *Asbury v. Lombardi,* 846 S.W.2d 196, 202 n. 9 (Mo. banc 1993)).

The plain language of section 454.934 mandates that the "employer *shall* treat an income withholding order issued in an-

---

**3.**  In Missouri, the UIFSA is codified in sec-   tions 454.850 through 454.997.

other state which appears regular on its face as if it had been issued by a tribunal of this state." § 454.934(b) (emphasis added). It also provides "the employer *shall* withhold and distribute the funds as directed *in the withholding order* by complying with the *terms of the order* ... that specify ... the amount of periodic payments of arrears ...." § 454.934(c)-(5) (emphasis added). Significantly, it does not direct the employer to only withhold wages or salary. The only limitations placed on compliance with the foreign income withholding order are contained in sections 454.934(d) and 454.936 regarding compliance with multiple orders and the state laws of the obligor's principal place of employment in respect to processing fees, maximum amount allowed to withhold, and time periods for implementation.

With respect to the type of income subject to withholding, section 454.934 unambiguously requires an employer to comply with a foreign income withholding order. We would have to write new language in the statute to permit employers to comply with the foreign order *only* to the extent the order demands withholding of "salary or wages" that are earned as a result of the obligor's employment and not other sources of funds.

As directed by the language in section 454.934, we look to the foreign income withholding order itself to determine the funds an employer is required to withhold and distribute. The Florida Order sent to Marshall Farms clearly required Marshall Farms to withhold more than just Husband's wages. First, the Notice to Payor sent to Marshall Farms stated: "You are required to begin an income deduction in compliance with the income deduction order entered by the court...." The Florida Order mandated that any payor "shall deduct from all income due and payable to the Obligor" the amount due. Further, the Florida Order defined "income" as "[a]ny form of payment to an individual *regardless of the source* including, but not limited to, wages, salaries, commissions and bonuses ... *dividends,* royalties or trust accounts...." (Emphasis added.)

This interpretation of income is also supported by other statutory sections governing Missouri withholding orders in the UIFSA. Section 454.850 states: "'Income' includes earnings or other periodic entitlements to money from *any source* and any other property subject to withholding for support under the law of this state." (emphasis added). "Income" is also defined in section 452.350 as "any periodic form of payment due to an individual, *regardless of source* ...." (Emphasis added.)

Furthermore, section 454.941 mandates that an employer comply with a foreign income withholding order under penalty of law.[4] Holding employers liable for conversion for complying with a foreign income withholding order is contrary to section 454.934 and would place employers in a precarious position.

Accordingly, we find Marshall Farms, as Husband's employer, was required by sections 454.932, 454.934, and 454.941, to comply in full with the Florida Order. The Florida Order compelled Marshall Farms to withhold and distribute *any* source of income, which included Husband's corporate dividends. It is of no consequence the corporate dividends were not wages or salary earned as a result of his employment with Marshall Farms. Therefore, we

---

4. Section 454.941 declares: "An employer who willfully fails to comply with an income withholding order issued by another state and received for enforcement is subject to the same penalties that may be imposed for noncompliance with an order issued by a tribunal of this state."

find Husband failed to meet his burden to demonstrate he was entitled to judgment as a matter of law. The judgment against Marshall Farms is reversed.

## II. Lucky Seven Partnership

■ Next, we determine whether Husband's position as a general partner in Lucky Seven qualifies Lucky Seven as his "employer" pursuant to section 454.932. Appellants allege the word "employer" in section 454.932 must be read to extend to all payors of periodic income in order to be read consistently and harmoniously with the sections it cross-references. We disagree with Appellants' contention as to this interpretation.

Again, " '[t]he primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning.' " *Cantrell v. Baldwin Transportation, Inc.*, 296 S.W.3d 17, 20 (Mo.App. S.D.2009) (quoting *South Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 666 (Mo. banc 2009)).

Section 454.932 cross-references sections 452.350 and 454.505 to provide a definition of "obligor's employer";[5] unfortunately, neither of these sections explicitly define "employer." Section 452.350 outlines Missouri's procedure for withholding wages or other income of an obligor. It contains numerous references to the obligor's "employer or other payor." Unfortunately, section 452.350 does not contain a definition of "employer" other than to note that "the term 'employer' includes the state and its political subdivisions." § 452.350.8.

Section 454.505 is Missouri's procedure for garnishment to enforce an administrative order. However, this section is also lacking in an explicit definition of the term "employer," although it too contains many references to an "employer or other payor."

To assist in ascertaining the intent of the legislature as to what persons or entities are subject to foreign income withholding orders under section 454.932, we examine the use of the term "employer" in the cross-referenced sections. Specifically, we look at "employer" in relation to the term "other payor" to determine if the intent was to include all payors of periodic income as Appellants contend. Because sections 452.350 and 454.505 utilize the term "other payor" to describe payors other than employers, the usage of this term in these sections is also helpful to ascertain the meaning of "employer" in these statutory sections. Appellants contend the cross-referenced sections do not differentiate between "employers" and "other payors."

However, in examining sections 452.350 and 454.505, we find the terms "employer" and "other payor" are not used interchangeably. For example, only the term "employer" is used when outlining requirements involving wages and activities generally relevant only to employers, such as discharging, disciplining, or refusing to hire an employee because of a withholding notice.[6] The statute also distinguishes between "employers" and "other payors" in section 454.505.4: "If the order is served on a payor *other than an employer* ...."

---

**5.** "[T]he person or entity defined as the obligor's employer under section 452.350, RSMo, or section 454.505 ...." § 454.932.

**6.** For example, section 454.505.7 provides: "[t]he employer shall withhold and pay to the payment center in an amount equal to the wage withholding limitations." Section 452.350.9 states: "An employer shall not discharge or otherwise discipline, or refuse to hire, an employee as a result of a withholding notice issued pursuant to this section."

Where the sections appear to include all payors of periodic income, the language "employer or other payor" is used.[7] This distinct use of the terms in the referenced sections indicates a legislative intent for the terms "employer" and "other payor" to have different meanings. Thus, we must interpret the effect of the legislature's omission of "other payors" from section 454.932.

■ Appellants are correct that the broad legislative intent of UIFSA is to allow recovery for all periodic forms of income to help satisfy obligor's child support and maintenance obligations; the plain language in section 454.932 and the context of the cross-referenced sections, however, indicate this particular section is limited to collection from "obligor's employer" only. No matter how desirable as a matter of public policy it might be to extend application of section 454.932 to include all payors, the General Assembly did not explicitly define "employer" to include all payors in section 454.932. To adopt the construction urged by Appellants, we would essentially be required to write into section 454.932 the term "other payors" as persons or entities the income withholding order may be sent in addition

to the existing language of "obligor's employer." We cannot usurp the function of the General Assembly, or by construction, rewrite its acts. *See Hudson v. State*, 190 S.W.3d 434, 441 (Mo.App. W.D.2006).[8]

■ "When a statutory term is not defined, courts apply the ordinary meaning of the term as found in the dictionary." *Harness v. Southern Copyroll, Inc.*, 291 S.W.3d 299, 304 (Mo.App. S.D.2009). Since "employer" is not defined in section 454.932, or the cross-referenced sections, we look to BLACK'S LAW DICTIONARY for guidance. BLACK'S LAW DICTIONARY defines "employer" as "[a] person who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages." 565–66 (8th ed.2004). In rejecting Appellants' overbroad definition of "employer" and applying the ordinary meaning of the term, we find Lucky Seven, as a partnership to which Husband is a partner, is not Husband's employer under section 454.932.[9]

We find Husband's position as a general partner at Lucky Seven does not make Lucky Seven Husband's employer under section 454.932, and thus did not require

---

**7.** Section 454.505.5 states: "The division shall notify an employer or other payor . . . ."; and section 454.505.8 states: "An employer or other payor who fails or refuses to withhold . . . ."

**8.** Further supporting this interpretation is the fact that section 454.934 directs only "employers" in complying with a foreign income withholding order. The language in this section is unambiguous as it does not reference other sections to define "employer." Rather, section 454.934, as reflected in the legislative intent adduced from the plain and ordinary meaning of "employer," only authorizes obligor's employer to comply with a foreign income withholding order.

**9.** Section 358.060 defines a "partnership" as "an association of two or more persons to

carry on as co-owners a business for profit. . . ." General partners all have equal rights in the management and conduct of the partnership business. § 358.180(5). A partner is not generally controlled by an express or implied contract of hire and paid a salary or wages. The Missouri Supreme Court held in the context of the workers' compensation law, an individual cannot be both an employer and an employee. *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 618 (Mo. banc 1977). This Court further explained that nothing in the amended workers' compensation act "creates a special dual capacity, or simultaneous employer and employee status, for partners, co-partners, or sole proprietors." *Harrison v. Harrison Turf Co.*, 908 S.W.2d 159, 162 (Mo. App. E.D.1995).

Lucky Seven's compliance with the Florida Order. Therefore, Husband met his burden of showing he was entitled to judgment as a matter of law. Appellants' point here is denied.

In conclusion, we reverse the judgment against Marshall Farms and remand to the trial court for further proceedings not inconsistent with this opinion and affirm the judgment against Lucky Seven.

SCOTT, C.J., and BATES, J., concur.