**STATE of Missouri, Respondent,**

v.

**Brian J. KINDER, Movant/Appellant.**

**No. ED 82688.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 21, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 24, 2003.

Application for Transfer Denied
Jan. 27, 2004.

Frederick A. Duchardt, Jr., Kearney, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Munson Morris, III, Michael J. Spillane, Asst. Attys. Gen., Jefferson City, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

Brian Kinder, the movant, appeals from the motion court's judgment denying, without an evidentiary hearing, his post-conviction motion for DNA[1] testing. The movant was previously tried, convicted, and sentenced to death for a 1990 murder. DNA evidence was introduced at trial, however, the movant did not have his own independent testing performed. He now seeks testing, specifically Polymerase Chain Reaction (PCR) DNA testing. The movant contends that contrary to the motion court's findings, he has satisfied all the statutory requirements entitling him to a hearing and testing. Specifically, the movant alleges he demonstrated he had not previously tested the evidence because (1) PCR testing technology was not available at the time of his trial; and (2) the evidence was "otherwise unavailable" to him and his counsel at the time of trial because, when an altered exhibit was revealed at trial, it was too late for him to obtain his own testing. Additionally, the movant contends he demonstrated a reasonable probability existed that he would not have been convicted had exculpatory results been obtained through the requested testing. However, we find no clear error in the motion court's conclusions that the movant did not demonstrate why he had not previously tested the evidence. Accordingly, the movant was not entitled to a hearing or DNA testing. We affirm.

*Factual and Procedural Background*

A jury found the movant guilty of first-degree murder, rape, and armed criminal action, for which he was sentenced to death and two consecutive life terms.[2] The movant pursued a direct appeal, as well as post-conviction relief under Rule 29.15. On consolidated appeal, the Missouri Supreme Court affirmed the conviction, sentence, and the denial of post-conviction relief. *State v. Kinder*, 942 S.W.2d 313 (Mo. banc 1996). Thereafter, the movant sought, but was denied, federal habeas-corpus relief. *Kinder v. Bowersox*, 272 F.3d 532 (8th Cir.2001). The movant then filed his post-conviction motion for DNA testing.

DNA evidence was introduced by the State during the movant's original trial. Blood samples from the movant, the victim, and the victim's estranged husband, as well as vaginal swabs obtained from the victim's body were tested in order to determine the genetic profile for each sample. In performing the tests, the State's DNA expert, Dr. Allen, employed the Restriction Fragment Length Polymorphism (RFLP) method of DNA analysis.[3] Test-

---

1. DNA is the common abbreviation for deoxyribonucleic acid. For further general information concerning DNA we direct the reader to *State v. Davis*, 814 S.W.2d 593, 598 (Mo. 1991); *State v. Schwartz*, 447 N.W.2d 422 (Minn.1989); *Cobey v. State*, 80 Md.App. 31, 559 A.2d 391 (Md.App.1989); *State v. Alt*, 504 N.W.2d 168 (Minn.App.1993); and *Prater v. State*, 307 Ark. 180, 820 S.W.2d 429 (1991).

2. For further factual background, see *State v. Kinder*, 942 S.W.2d 313 (Mo. banc 1996).

3. In simplified terms, RFLP analysis involves the following steps:

 1) *Extraction.* DNA is chemically extracted from the sample and purified.

 2) *Fragmentation.* The extracted DNA is then cut into fragments by restricting enzymes which, depending upon the enzyme selected, cut the DNA at specific points along the DNA chain. Because the sequential characteristics of DNA vary from person to person, everyone's DNA gets cut up differently and the fragments will have different sizes.

 3) *Gel Electrophoresis.* The DNA fragments are then separated by size. The fragments are placed in an agarose gel, to which an electrical current is applied. Because DNA has a natural negative charge, and because opposite electrical charges attract, the fragments move away from the negatively charged pole and mi-

ing revealed that two DNA profiles were represented on the vaginal swab, one of which matched the victim's profile. Dr. Allen testified that the second DNA profile found in the vaginal swab, likely from semen, matched the movant's DNA profile. The movant retained two DNA experts prior to trial, one of whom testified at trial and with whom defense counsel conferred prior to his cross-examination of Dr. Allen. The movant, however, did not have his own independent DNA testing performed.

The movant challenged Dr. Allen's testimony and the DNA evidence throughout his appellate and post-conviction proceedings. Among the movant's various complaints was his allegation that one of the five autoradiographs[4] introduced at trial had been altered to mask an exculpatory result. Specifically, the movant alleged there had been an alteration of Exhibit 46—the autoradiograph for chromosome 10, using the TBQ7 radioactive probe. According to the movant, a duplicate copy of the autoradiograph, which was made for the defense at the time of pretrial hearings, contained markings (stylus pinpoints) made by Dr. Allen indicating three DNA bands, two of which matched the movant's

grate toward the positive pole. The larger DNA fragments move more slowly through the gel and thus a shorter distance than the smaller fragments of DNA. The end result is that the fragments are sorted by size, from the largest to the smallest, into an orderly pattern of fragments along parallel lines.

4) *Southern Blotting.* The DNA band pattern of fragments in the gel is then transferred and permanently affixed onto a nylon membrane, in exactly the same positions as the fragments occupied in the gel. During this process, the double-stranded DNA fragments are chemically split apart—"unzipped" from one another—at their base pairings.

5) *Hybridization.* To identify the location of specific regions of DNA, radioactive probes are applied to the nylon membrane. A probe is a single-stranded fragment of DNA of a known sequence. These probes are developed in the laboratory and are tagged with a radioactive marker. The probes are designed to seek out a predetermined region on the DNA molecule. As the radioactive probes are applied to the nylon membrane, they locate and bind themselves to their specific complementary DNA sequence on the nylon membrane, in essence "zipping" back parts of the DNA fragments.

6) *Autoradiograph.* The nylon membrane with the attached radioactive probes is then placed next to a sheet of x-ray film and exposed for several days. When the film is processed, black bands appear on the film at the location where the radioactive probe had attached itself to the fragments on the nylon membrane. This x-ray photograph is called an autoradiograph or, more commonly, an autorad, and is the photographic representation of the DNA profile of the particular sample tested. The process of applying probes and producing an autoradiograph can be repeated. The probe can be removed from the membrane and a different radioactive probe applied and a new autoradiograph produced in order to locate a different DNA sequence within the DNA band pattern of fragments extracted from the sample.

7) *Interpretation.* As no two individuals, except for identical twins, have identical DNA, the banding pattern and the bands revealed on the autoradiograph, will vary from person to person. Thus, an analyst can compare autoradiographs from two separate DNA samples to determine if there is a match.

See *State v. Davis*, 814 S.W.2d 593 (Mo.1991); For further information regarding RFLP analysis see also *Cobey v. State*, 80 Md.App. 31, 559 A.2d 391 (1989); *State v. Schwartz*, 447 N.W.2d 422 (Minn.1989); *State v. Alt*, 504 N.W.2d 38 (Minn.App.1993); *Prater v. State*, 307 Ark. 180, 820 S.W.2d 429 (1991); *State v. Houser*, 241 Neb. 525, 490 N.W.2d 168 (1992).

4. In this case, Dr. Allen utilized five different probes, testing for regions located on chromosomes two, four, ten, eleven, and sixteen. According to Dr. Allen, the movant matched the second DNA profile found on the vaginal swab on each and every film.

profile, but one of which did not match his profile. When the original autoradiograph was introduced at trial, however, the autoradiograph contained only two such markings—those indicating the DNA bands that matched the movant's profile. The movant alleged the marking made by Dr. Allen to denote the third non-matching DNA band had been removed from the autoradiograph. *See State v. Kinder*, 942 S.W.2d at 328. In addressing the admissibility of the DNA evidence and the movant's allegation of the altered autoradiograph, the Missouri Supreme Court found that the movant's trial objection to the allegedly altered evidence was untimely, and that furthermore, the claim of alteration was for the jury to decide. *State v. Kinder*, 942 S.W.2d at 328.[5]

Since trial, the movant has made numerous attempts to have the evidence retested. First, at the state level, the movant's post-conviction counsel requested, but was denied, funding to retain a DNA expert and to conduct retesting. The Missouri Supreme Court found the movant's request for additional funds lacked merit, reasoning that the movant had the benefit of the services of several DNA experts at trial, as well as a full investigation conducted by the Public Defender's office before trial. *State v. Kinder*, 942 S.W.2d at 334. The movant also sought funding for DNA testing as part of his petition for federal habeas-corpus relief. This request was also denied, as the federal courts concluded the movant's claim did not "raise a constitutional issue cognizable in a federal habeas petition." *Kinder v. Bowersox*, 272 F.3d at 545. The movant now seeks DNA

testing pursuant to the relatively new state statute allowing for the filing of post-conviction motions for DNA testing, section 547.035 RSMo.2001.[6] The motion court, without holding an evidentiary hearing, denied the movant's request. The court found the movant was not entitled to relief because he had not satisfied certain statutory requirements. The movant now appeals.

### Jurisdiction

■ Before we address the merits of the movant's claims, we first note that we have jurisdiction over this appeal. Though neither party challenges this court's jurisdiction, we have an affirmative duty to determine our jurisdiction *sua sponte*. *Rosenfeld v. Thoele*, 28 S.W.3d 446, 449 (Mo.App. E.D.2000). The Missouri Constitution provides that the Court of Appeals has general appellate jurisdiction in all cases except those within the exclusive appellate jurisdiction of the Supreme Court. Mo. Const. art. V, sec. 3. Included among those cases within the Supreme Court's exclusive appellate jurisdiction are those in which the punishment imposed is death, and those involving the validity of a state statute. The present case, however, does not fall within these categories of cases. While the Supreme Court has exclusive appellate jurisdiction in all cases where the punishment imposed is death, this is a post-conviction proceeding for DNA testing, and like other post-conviction proceedings, an independent action. *See Conley v. State*, 774 S.W.2d 863, 864 (Mo.App. E.D.1989)(proceeding for post-conviction relief is an independent civil

**5.** The federal courts noted that the Missouri Supreme Court's conclusions reflected reasonable applications of the legal principles regarding the admissibility of expert evidence. The Eighth Circuit then found the movant's arguments regarding the allegedly altered autoradiograph and Dr. Allen's methodology

raised no grounds for reversal of the District Court's denial of federal habeas-corpus relief. *Kinder v. Bowersox*, 272 F.3d at 545.

**6.** All further statutory references are to RSMo.2001.

proceeding). Punishment of death will not be imposed in this case. The death penalty has already been imposed in a prior case, and affirmed by the Missouri Supreme Court. *State v. Kinder*, 942 S.W.2d 313 (Mo. banc 1996). Further, while the Supreme Court also has exclusive appellate jurisdiction in all cases involving the validity of a state statute, here, the movant does not contest the validity of section 547.035, but rather only alleges the appeal involves the construction of that statute. Under Missouri's constitutional scheme, this court has jurisdiction to initially consider the construction of a statute.

The movant's case does not involve the imposition of the death penalty, does not involve the validity of a state statute, nor does the movant's case fall within any of the other specified categories of cases for which the Supreme Court has exclusive appellate jurisdiction. Accordingly, this case falls within the general appellate jurisdiction of the Court of Appeals. Mo. Const. art. V, sec. 3. We note the movant sought transfer of this appeal to the Missouri Supreme Court, prior to opinion, on grounds that the case was of particular interest and importance because the case involved the interpretation of a relatively new statute in a case of a man who has been sentenced to death. The Supreme Court denied the movant's application for transfer. Further, the movant timely appeals from a final judgment denying his post-conviction motion for DNA testing. Authority to take an appeal from the court's findings of fact and conclusions of law is provided by section 547.037.6. This court has jurisdiction.

## Standard of Review

Having determined our jurisdiction to entertain this appeal, we turn to the applicable standard of review for the issues raised in this appeal. The movant brought his post-conviction motion for DNA testing pursuant to section 547.035. As provided in the statute, the rules of civil procedure govern the proceedings insofar as applicable. Section 547.035.1. Therefore, the same civil standards that apply in other post-conviction proceedings apply to this appeal as well. *Snowdell v. State*, 90 S.W.3d 512, 514 (Mo.App. E.D.2002). Appellate review in post-conviction proceedings is limited to determining whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000); *Snowdell*, 90 S.W.3d at 514. The motion court's findings and conclusions are clearly erroneous if, after reviewing the entire record, we are left with the definite and firm impression that a mistake has been made. *Id.* Further, this case involves the construction of section 547.035. Statutory interpretation is an issue of law that we review *de novo. Blakely v. Blakely*, 83 S.W.3d 537, 540 (Mo. banc 2002).

## Discussion

■ Section 547.035 permits a person, in the custody of the department of corrections, claiming that forensic DNA testing will demonstrate the person's innocence of the crime for which the person is in custody, to file a post-conviction motion seeking such testing. Section 547.035.1. The motion must contain specific enumerated information in order for the movant to be entitled to a hearing and DNA testing. As set forth in section 547.035.2, the motion must allege facts demonstrating the following:

(1) there is evidence upon which DNA testing can be conducted; and

(2) the evidence was secured in relation to the crime; and

(3) the evidence was not previously tested by the movant because:

(a) the technology for the testing was not reasonably available to the movant at the time of the trial;

(b) neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or

(c) the evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial; and

(4) identity was an issue in the trial; and

(5) a reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

Section 547.035.2.

Following the filing of a motion, the prosecutor will be ordered to show cause why the motion should not be granted unless it appears from the motion that a movant is not entitled to relief or the court finds the files and records of the case conclusively show that a movant is not entitled to relief. Section 547.035.4. Further, if the court finds that the motion, files, and records of the case conclusively show that a movant is not entitled to relief, a hearing shall not be held. Section 547.035.6. But, if the court finds that a movant is entitled to relief and a reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing, then the court shall order testing. Section 547.035.7.

In this case, the motion court found the movant was not entitled to a hearing or DNA testing because, based on the motion and the files and records of the case, the movant failed to meet all the statutory requirements. More specifically, the court found the movant had not demonstrated why he had not previously tested the evidence, 547.035.2(3), and had not demonstrated a reasonable probability existed that he would not have been convicted if exculpatory results had been obtained through the requested DNA testing, as required by 547.035.2(5).[7] We need not reach the court's findings regarding this last requirement, as we find no clear error in the court's conclusions that the movant did not make the requisite showing as to why he had not previously tested the evidence. Failing to meet this requirement, the movant was not entitled to relief.

To be entitled to post-conviction DNA testing, a movant must allege facts demonstrating one of the three alternative justifications set out in the statute as to why he or she did not previously test the evidence. 547.035.2(3). In his motion, the movant alleged both that the technology for testing was not reasonably available at the time of trial, 547.035.2(3)(a), and that the evidence was otherwise unavailable to him at the time of trial, 547.035.2(3)(c).[8] We shall address each allegation in turn.

First, in order to demonstrate the technology for the testing was not reasonably available to him at the time of his trial, the movant alleged that, since the time of his

---

**7.** In his motion, the movant also alleged, with citations to the record, that the DNA evidence was still available for testing, 547.035.2(1), DNA evidence was secured in relation to the crime, 547.035.2(2), and that identity was an issue at the movant's trial, 547.035.2(4). The State *has* not contested these allegations. And, the court, in its judgment, made no findings regarding these three requirements.

**8.** As to the third alternative justification, the movant made no claim that he or his trial counsel were unaware of the existence of evidence that could have been used for DNA testing. 547.035.2(3)(b).

trial, more accurate DNA testing procedures had been developed and made available. The movant specifically sought PCR DNA testing, rather than the RFLP technique used by Dr. Allen, contending the PCR technique was reasonably necessary for an accurate analysis of the sample in this case. The PCR technique was not available at the time of the movant's trial. According to a crime lab employee's affidavit accompanying the movant's motion, although RFLP was the method used in the early years of DNA testing, that technique had recently been abandoned in favor of the PCR technique. It is further vouched that today the RFLP technique would not be used to retest a sample that had a questionable outcome using that technique, but rather the PCR technique would be the method of choice for retesting the evidence.

The motion court found that, while there may be a different technique, for DNA testing than that which existed at the time of the movant's trial, there was reliable technology for DNA testing available to the movant at the time of his trial, just as it was to the State.[9] On appeal, the movant complains the court has apparently interpreted the statute to mean that so long as there was any testing method available at the time of trial and a movant did not resort to that method, then that movant cannot meet the statutory requirement. The movant contends that in interpreting the statute in this manner, the court failed to give effect to the statutory language that *"the* technology" must be *"reasonably* available." (emphasis in movant's brief). The movant argues that while RFLP technology was available at the time of his trial, this did not mean that technology was "reasonably available" be-

cause that technology created controversy over the interpretation of one of the autoradiographs. The movant argues there is every reason to believe that another RFLP test would have produced the same anomalous results. Thus, he contends the PCR technique is the scientifically correct and necessary test to quell the controversy over the results from the initial testing. In sum, the movant argues that since the only meaningful, effective, viable technology for properly testing the sample did not exist at the time of his trial, his situation meets the requirement that "the technology for the testing was not reasonably available to the movant at the time of trial." We disagree.

 Resolution of the movant's claims necessarily requires the interpretation of the involved statute. When interpreting a statute, our primary role is to ascertain the intent of the legislature from the language used, and to give effect to that intent, if possible. *Lewis v. Gibbons,* 80 S.W.3d 461, 465 (Mo. banc 2002); *Martinez v. State,* 24 S.W.3d 10, 16 (Mo.App. E.D.2000). And, while the first source in determining legislative intent is to consider the words used in their plain and ordinary meaning, the meaning of words must also depend, to some extent, on the context in which they appear. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 19 (Mo. banc 1995); *Appleby v. Director of Revenue,* 851 S.W.2d 540, 541 (Mo.App. W.D. 1993). Moreover, we are to presume a logical result, as opposed to an absurd or unreasonable one. *State v. Jennings,* 887 S.W.2d 752, 755 (Mo.App. W.D.1994).

The statute allowing for post-conviction DNA testing embodies the legislature's balancing of competing interests. There is, on one hand, a legitimate concern with

9. As noted by the Missouri Supreme Court, the RFLP method of DNA testing had gained general acceptance in the scientific communi-

ty. See *State v. Kinder,* 942 S.W.2d 313 (Mo. banc 1996).

the need for finality of a conviction. On the other hand, there rests real concern that DNA technology could produce exonerating results. The legislature has struck a balance and decided to allow for post-conviction testing, but only under limited circumstances.

The legislature has decided only three reasons might justify a defendant's failure to test the evidence at his original trial. If the technology was not reasonably available, if there was no awareness of the evidence's existence, or if the evidence was then otherwise unavailable, the defendant's failure to test might be excused. The legislature has not evinced any intent to otherwise allow for testing. If a defendant chose not to test evidence for a reason other than those statutorily denominated, the statute affords no relief.

Here, the movant claims the technology was not reasonably available. However, DNA testing was available and, in fact, used in the movant's original trial. It is true that PCR technology was not available; however, RFLP technology was available and was used. We perceive no legislative intent to allow serial retesting of evidence due to a change in DNA technology. To so hold would upset the balance the legislature has struck, and allow a movant to claim that, with every new technology or new refinement thereof, he had a right to retest the evidence. Such an interpretation of the statute could result in repeated requests for DNA retesting, thereby preventing a conviction from ever becoming final.

The movant argues the court failed to give effect to the statutory language that the technology be "reasonably available." He attempts to justify his failure to test the evidence by claiming the technology was not "reasonably available" because an allegedly 'anomalous' result led to a disputed interpretation of the results through RFLP DNA testing. We are unpersuaded by the movant's argument. Such an allegedly anomalous result and disputed interpretation did not arise until the middle of trial, well past the time a decision had been made not to test the evidence. Further, any controversy over the interpretation of the results from a particular method of testing is a matter which can be examined during trial. It does not mean the technology was not reasonably available to the movant for him to conduct his own testing in the first place.

The movant argues the court failed to give effect to the statutory language of "the technology" and complains the court restricted the statute's meaning such that, so long as any testing method was available at the time of trial and a movant did not resort to that method, then that movant cannot meet the statutory requirement. The movant's motion does specifically request the PCR method of DNA testing, and the statutory language in this subsection does include the definite articles of "the" technology and "the" testing. However, considering the context of the entire statute, with repeated references to "DNA testing," we hold the legislature intended that a movant need show that he or she did not test the evidence because scientifically reliable DNA testing technology was unavailable, not merely because a specific method of testing was unavailable. We decline to read the language in this subsection as referring to the availability of a specific method of DNA testing, potentially opening the door to retesting each time a new and improved method of DNA testing may be developed.

The motion court found there was reliable technology for DNA testing available to the movant at the time of his trial, just as it was to the State which employed such technology. Upon review of the record, we are not left with a definite and firm

impression that the court erred in so concluding. The movant failed to demonstrate the first statutory justification as to why he had not previously tested the evidence—that the technology for the testing was not reasonably available to him at the time of trial.

■ As an alternative justification for why he did not previously test the evidence, the movant alleged the evidence was "otherwise unavailable" for his testing because his need for retesting the sample developed only after the allegedly altered autoradiograph was introduced at trial, at a time too late for him to obtain his own testing. As explained by trial counsel, he deemed independent testing unnecessary because he believed the state's DNA evidence—the autoradiograph with marks demonstrating the detection of three DNA bands—had produced an exonerating result that he intended to bring out at trial. But, as counsel explained, when the autoradiograph was introduced at trial, it no longer provided the expected exculpatory result, and it was too late at that time to obtain independent testing.

The motion court found the movant's allegation that the evidence was otherwise unavailable for his testing at the time of trial was inaccurate, noting the federal courts' opinion that the movant had a full and fair opportunity at the trial stage to run his own tests and to hire his own experts to analyze the data. On appeal, the movant contends that by choosing the broad language of "otherwise unavailable," the legislature expressed its intent that a movant be allowed to resort to a wide range of justifications for not testing the evidence at time of trial. The movant argues the statutory language should be read broadly, and contends the phrase "otherwise unavailable" is broad enough to include the facts of this case, that when the autoradiograph was introduced at trial and no longer provided the expected exculpato-

ry result, the evidence was otherwise unavailable because it was too late to conduct the testing. Further, the movant cites to a line of cases for the proposition that when a defense is unnecessary it is unavailable. He then argues, in like manner here, that because the defense, or evidence, was unnecessary due to an apparent exculpatory result in the State's test, the evidence was rendered unavailable. We disagree.

The statute requires the movant demonstrate he did not previously test the evidence because "the evidence was otherwise unavailable to both the movant and the movant's trial counsel at the time of trial." Section 547.035.2(3)(c). It is one thing to say a *defense* appeared *unnecessary;* however, it is quite another to say *evidence* was otherwise *unavailable* to the movant so that he could not conduct his own testing. Further, the records and files of this case contradict the movant's assertion that he believed the State's evidence had produced an exculpatory result and that he intended to bring out this exculpatory result at trial. Trial counsel did not argue the State's evidence had produced an exculpatory result. Rather, a review of his cross-examination of Dr. Allen reveals counsel's theory on cross-examination was that the third dot on the autoradiograph marked a DNA band attributable to the victim. And, the movant's own expert offered no opinion that the third band would be exculpatory.

Even assuming counsel believed the exhibit was exculpatory, but was so stunned at trial that he failed to bring out the allegedly exculpatory nature of the unaltered autoradiograph, this does not make the evidence "otherwise unavailable" to the movant within the meaning of the statute. We decline to read this language as meaning the evidence was otherwise unavailable merely because it was too late to conduct the testing, or because trial counsel decid-

ed not to test evidence which was clearly available for testing. We find no clear error in the court's conclusion that the movant failed to demonstrate the evidence was not otherwise unavailable for the movant to test at the time of trial.

To be entitled to post-conviction DNA testing, the movant's motion must allege facts demonstrating why the evidence was not previously tested by the movant. The movant failed to do so in this case. The limited circumstances established by the legislature to justify a failure to test are absent here. Accordingly, the movant was not entitled to either a hearing or testing. The motion court did not err in not holding an evidentiary hearing and in denying the movant's motion.

Judgment affirmed.

CLIFFORD H. AHRENS, P.J., and WILLIAM H. CRANDALL, JR., J., concur.