In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

 STATE OF MISSOURI, ) No. ED108750
 )
 Respondent, ) Appeal from the Circuit Court of
 ) Cape Girardeau County
 vs. )
 ) Honorable Benjamin F. Lewis
 FRED L. HARRIS, )
 )
 Appellant. ) Filed: March 23, 2021

 I. Introduction

 Fred Harris, Sr., (“Movant”) appeals the motion court’s denial of his motion for post-

conviction DNA testing, pursuant to § 547.035. 1 Movant raises two points on appeal. First,

Movant argues that the motion court clearly erred in denying his motion following a hearing

because the DNA testing methods that he seeks were not reasonably available to him at trial. He

also alleges that the motion court applied the incorrect test in making its determination. In his

second point on appeal, Movant asserts that the motion court clearly erred in denying his motion

because it incorrectly concluded that he chose not to pursue independent DNA testing as a matter

of trial strategy.

 We affirm.2

1
 All statutory references are to Mo. Rev. Stat. Cum. Supp. 2019 unless otherwise indicated.
2
 Although nothing in the record indicates the existence of evidence upon which DNA testing can be conducted, we
need not remand for further factual findings because Movant has otherwise failed to meet his burden of proof.
 II. Factual and Procedural Background

 On June 16, 2005, a jury convicted Movant of forcible rape. He received a fifty-year

sentence from the trial court on August 8, 2005. The State had conducted scientific and DNA

testing on evidence prior to his trial. This Court affirmed Movant’s conviction in State v. Harris,

193 S.W.3d 795 (Mo. App. E.D. 2006). He later sought post-conviction relief through

proceedings pursuant to Rule 29.15.3 This Court affirmed the denial of that motion in Harris v.

State, 282 S.W.3d 387 (Mo. App. E.D. 2009).

 On March 4, 2019, Movant filed this motion for post-conviction DNA testing pursuant to

§ 547.035. The motion court denied the motion following a hearing on December 19, 2019. The

motion court heard expert testimony from Diane Higgins, a forensic DNA analyst with the

Missouri State Highway Patrol Troop E Crime Laboratory (“Highway Patrol Lab”). Higgins

conducted DNA testing for the State prior to Movant’s trial while working as a forensic

criminalist with the Southeast Missouri Regional Crime Lab (“SEMO Lab”), which later merged

with the Highway Patrol Lab. Movant also testified.

 This appeal follows.

 III. Standard of Review

 Motions for post-conviction DNA testing pursuant to § 547.035 are post-conviction

motions governed by Rules 29.15 and 24.035 and therefore are governed by the standard of

review set out in those rules. Weeks v. State, 140 S.W.3d 39, 43-44 (Mo. banc 2004). The

appellate court reviews solely to determine whether the motion court commits clear error in its

findings of fact and conclusions of law. State v. Ruff, 256 S.W.3d 55, 56 (Mo. banc 2008) (citing

Weeks, 140 S.W.3d at 44). The motion court commits clear error when the appellate court, after

3
 All rule references are to the Missouri Supreme Court Rules (2019), unless otherwise indicated.

 2
reviewing the record, “is left with the definite and firm impression that a mistake has been

made.” Id. at 56 (internal citation omitted).

 IV. Discussion

 The Missouri General Assembly enacted § 547.035 to provide inmates with “an

opportunity to have potentially exculpatory DNA tests performed on evidence.” Id. at 58. To

receive a hearing, a movant must first file a motion alleging the following under oath:

 (1) There is evidence upon which DNA testing can be conducted; and

 (2) The evidence was secured in relation to the crime; and

 (3) The evidence was not previously tested by the movant because:

 (a) The technology for the testing was not reasonably available to the
 movant at the time of the trial;

 (b) Neither the movant nor his or her trial counsel was aware of the
 existence of the evidence at the time of trial; or

 (c) The evidence was otherwise unavailable to both the movant and
 movant's trial counsel at the time of trial; and

 (4) Identity was an issue in the trial; and

 (5) A reasonable probability exists that the movant would not have been
 convicted if exculpatory results had been obtained through the requested DNA
 testing.

§ 547.035.2.4 The court will then order the prosecutor to show cause as to why it should not

grant the motion, unless “it appears from the motion that the movant is not entitled to relief” or

“the files and records of the case conclusively show that the movant is not entitled to relief.”

§ 547.035.4. “If the court finds that the motion and the files and records of the case conclusively

4
 The parties did not dispute that Movant satisfied subsections (2) and (4) of § 547.035. Because Movant has not met
his burden under subsection (3), we need not reach whether he satisfied his burden under subsection (5).

 3
show that the movant is not entitled to relief, a hearing shall not be held.” § 547.035.6. “The

court shall order appropriate testing” if it finds the following, after a hearing:

 (1) A reasonable probability exists that the movant would not have been
 convicted if exculpatory results had been obtained through the requested
 DNA testing; and

 (2) That movant is entitled to relief.

§ 547.035.7. “To show that he is entitled to relief, under § 547.035, the movant has the ‘burden

of proving the allegations of the motion, which must be as outlined in § 547.035.2.’” Hudson v.

State, 190 S.W.3d 434, 439 (Mo. App. W.D. 2006) (quoting Matney v. State, 110 S.W.3d 872,

876 (Mo. App. S.D. 2003)); accord State v. Fields, 517 S.W.3d 549, 553 (Mo. App. E.D. 2016).

“Whether or not a hearing is held, the court shall issue findings of fact and conclusions of law.”

State v. Cox, 563 S.W.3d 801, 811 (Mo. App. W.D. 2018) (citing § 547.035.8).

 In both points on appeal, Movant contends the motion court clearly erred in finding that

he failed to satisfy the requirements of § 547.035.2(3)(a). Movant makes no allegations that he

has satisfied subsections (b) or (c) of § 547.035.2(3).

 To satisfy § 547.035.2(3)(a), a movant must show that “the technology for the testing was

not reasonably available to the movant” at trial. Weeks, 140 S.W.3d at 48 (quoting

§ 547.035.2(3)(a)) (emphasis in original). “The test is a subjective one, subject to a reasonable

availability standard, not a question of objective scientific feasibility.” Id. (emphases in original).

Therefore, Missouri courts must consider the movant’s particular circumstances in determining

the reasonable availability of testing prior to trial. State v. Fields, 517 S.W.3d at 554-55 (citing

Weeks, 140 S.W.3d at 48).

 4
 Point I

 In his first point on appeal, Movant makes two arguments. 5 First, he argues that the

motion court clearly erred in finding that, because the State conducted DNA testing for his trial,

he cannot obtain further DNA testing because the testing he seeks was not reasonably available

to him at trial. Specifically, he seeks testing with methods and techniques unavailable prior to his

trial, and he seeks testing on objects that went untested prior to his trial. Second, he argues that

the motion court erred by incorrectly applying an objective test in reaching its conclusions, rather

than the proper subjective test.

 Advancements in DNA Technology

 Movant first argues that evolutions in DNA testing technology have made the prior-used

testing technologies unreliable. The Supreme Court of Missouri has noted that § 547.035.2(3)(a)

“specifically contemplates technological developments that will permit later testing; where new

testing techniques become available that shed doubt on previous findings, subsequent motions

are permitted.” Belcher v. State, 299 S.W.3d 294, 297 (Mo. banc 2009). However, there is “no

legislative intent [behind § 547.035] to allow serial retesting of evidence due to a change in DNA

technology.” State v. Kinder, 122 S.W.3d 624, 632 (Mo. App. E.D. 2003) (denying a motion

requesting the newly developed PCR DNA testing method prior to the movant’s trial because the

State conducted RFLP DNA testing, which was still considered reliable); see also Fields v. State,

425 S.W.3d 215, 217 (Mo. App. E.D. 2014) (noting that Kinder is still “good law” for the

principle that “there is no second bite of the apple” when it comes to DNA testing). This Court

has “decline[d] to read the language in this subsection as referring to the availability of a specific

5
 We encourage mindfulness of Rule 84.04(d). “Multifarious points relied on are noncompliant with Rule 84.04(d)
and preserve nothing for review. State v. Prewitt, 575 S.W.3d 701, 702 n.2 (Mo. App. W.D. 2019) (quoting Griffitts
v. Old Republic Ins. Co., 550 S.W.3d 474, 478 n.6 (Mo. banc 2018)). Nevertheless, we prefer to decide cases on the
merits and exercise our discretion to review the merits of this case ex gratia. Id.

 5
method of DNA testing, potentially opening the door to retesting each time a new and improved

method of DNA testing may be developed.” Kinder, 122 S.W.3d at 633.

 According to the motion court, DNA testing has made some advancements since the time

of Movant’s trial, but these advancements are insubstantial and therefore not enough to afford

Movant any relief. The motion court also “[did] not find any support for Movant’s allegation that

DNA testing was not done on evidentiary items prior to trial or that DNA testing has developed

substantially beyond what was reasonably available to Movant at the time of the pre-trial

litigation of his case.” It reached this conclusion following an evidentiary hearing where it heard

testimony from Higgins and Movant.

 Movant has not demonstrated that the motion court clearly erred in reaching this

conclusion. He has not shown that he “did not test the evidence because scientifically reliable

DNA testing technology was unavailable, not merely because a specific method of testing was

unavailable.” Id. at 632. He first attempts to do this by calling into question the reliability of the

acid phosphatase and p30 testing used prior to his trial.6 Laboratories use these tests to detect the

presence of genetic material that might lead to the creation of a DNA profile. At Movant’s

evidentiary hearing, Higgins testified to the veracity of these presumptive tests at the time of

Movant’s trial and today, as well as to the methods and protocols used in obtaining the results.

The only difference she noted is the use of a different reagent. However, Movant has not cast

doubt on the reagent’s reliability. Regarding the p30 testing, Higgins testified that the Highway

Patrol Lab currently uses less sensitive p30 testing kits now than the SEMO Lab used prior to

Movant’s trial, but she otherwise did not testify that the scientific community considers the old

6
 Acid phosphatase and p30 testing are used in the serological step, the first step of the DNA testing process. See
State v. Dixon, 586 S.W.3d 304, 308 (Mo. App. W.D. 2019).

 6
p30 testing kit unreliable. These slight differences do not undermine the reliability of the

presumptive testing used on evidence in Movant’s trial.

 Movant has also not established that the motion court erred in determining that further

testing is not warranted due to the development of Y-STR DNA testing in the time following his

trial. Y-STR testing came into existence following Movant’s trial, according to Higgins’s

testimony. Again, Movant must show that Y-STR development of new technology undermines

the reliability of the old technologies used prior to trial. See Kinder, 122 S.W.3d at 632. In this

case, the State used STR DNA testing prior to trial. However, Movant has not shown that the

development of Y-STR testing casts any doubt on the reliability of STR testing. In fact, Higgins

testified as follows at the hearing:

 Q [Prosecutor]: And the gold standard in DNA testing back in 2004-2005[,] was
 that STR testing?

 A [Higgins]: Yes.

 Q: Is that still STR testing?

 A: Yes.

The record leaves us with no doubt as to the continued reliability of STR testing.7

 Items Untested or Inadequately Tested

 Movant additionally requests testing on hairs collected from the clothing of the victim

and Movant, on pubic hairs collected from hinge lifts and dollar bills taken from the abandoned

car where the rape occurred, and on the victim’s clothes. First, regarding the hairs from the

clothes, the motion court concluded that “it cannot be said that DNA testing on any of those hairs

would have evidentiary value” due to their consistency with hairs taken from the victim. Movant

7
 We note that the swab testing weakly positive for acid phosphatase may have been “consumed” during STR
testing, thus leaving no evidence available for Y-STR testing were we to afford Movant relief. Again, we need not
remand for further factual findings because Movant has otherwise not satisfied his burden under § 547.035.

 7
maintains that the lab performed inadequate testing on the hairs and should have conducted

mitochondrial DNA testing. Second, Movant disputes the motion court’s finding that the hairs

found on hinge lifts and dollar bills similarly provide no evidentiary value. The motion court

wrote:

 The presence of foreign DNA on hinge lifts taken from inside the abandoned car
 would merely establish that at some unknown point in time, some human being
 was present inside the car. This would prove nothing relevant to Movant’s
 defense. On the other hand, if those items [had] been tested and if they were
 found to contain Movant’s DNA, that evidence would have proved his presence at
 the scene of the crime and would have worked against him.

Third, Movant seeks touch DNA testing of victim’s clothes, highlighting the increased sensitivity

of current touch DNA testing kits. Importantly, the motion court determined that all of these

items were available to Movant and his trial counsel prior to trial, and that they could have

requested independent testing, but they elected not to do so.

 Movant has not established that the motion court clearly erred in making any of these

determinations. The motion court does not commit clear error when:

 From the trial transcript and movant's own motion, DNA analysis was available to
 the movant and his trial counsel prior to the time of his trial. The SEMO Crime
 lab did not conduct DNA analysis on the hairs[,] but there is nothing in the record
 that prevented trial counsel or movant from having an independent DNA
 examination of the hair samples as they existed at that time prior to trial. Because
 DNA analysis was available to the movant and the samples were made available
 to a different defense expert prior to trial, movant fails to meet § 547.035.2(3)(a),
 (b) and (c) to require a hearing to obtain DNA testing.

Hudson v. State, 270 S.W.3d 464, 468-69 (Mo. App. S.D. 2008). Movant finds himself in a

nearly analogous situation. He seeks testing on items that went untested prior to trial, having

declined the opportunity to have independent testing done. Higgins testified that the Highway

Patrol Lab does not routinely conduct touch DNA testing on money or clothing, nor does it

conduct mitochondrial DNA testing at all. However, she stated that, as a matter of standard

 8
procedure, the lab would send items off for private DNA testing upon the request of a party.

Movant and his trial counsel had this evidence available to them, and they could have requested

independent testing. But they elected not to pursue this path.8

 Court’s Application of the Subjective Test

 Movant further argues in his first point on appeal that the motion court clearly erred by

applying an objective test in concluding that he had DNA testing reasonably available to him

prior to trial, in violation of the purpose of § 547.035. The General Assembly enacted § 547.035

to provide inmates with “an opportunity to have potentially exculpatory DNA tests performed on

evidence.” Ruff, 256 S.W.3d at 58.

 The record in this case shows that the motion court applied the proper, subjective test

after thorough consideration of Movant’s circumstances at the time of his trial. See Weeks, 140

S.W.3d at 48 (“the Court looks at what was reasonably available to [the movant] in his

circumstances…”). At the hearing, the motion court listened to “extensive” expert testimony

from Higgins on “the DNA testing conducted in the pre-trial stages of this underlying criminal

matter, the current availability and limitations of DNA testing, and the existence of that testing at

the time of the litigation of the underlying offense.” In issuing its factual findings and legal

conclusions, the motion court highlighted the fact that the State conducted DNA testing prior to

Movant’s trial and pointed out that he could have made a request for independent DNA testing.

The motion court unmistakably based its decision on the circumstances surrounding Movant at

the time of his trial. We find no merit in Movant’s argument that the motion court violated the

purpose of § 547.035 by applying an objective test.

 Point I is denied.

8
 For more on the decision to not pursue independent DNA testing, see the subsection entitled Point II, infra.

 9
 Point II

 In his second point on appeal, Movant contends that the motion court clearly erred in

concluding that his trial counsel declined to pursue DNA testing as a matter of trial strategy.

Rather, Movant argues that misidentification and DNA defenses are capable of advancement

together, and that his trial counsel could not strategically avoid the DNA testing methods that he

argues were not reasonably available prior to his trial.

 In this case, the motion court found that “trial counsel previously testified his trial

strategy revolved around misidentification, rather than DNA issues[,] and that he made the

strategic decision to not split his theories of defense between the two.” On this basis, the motion

court concluded, “It therefore cannot be said that Movant or trial counsel were deprived of the

ability to request independent testing, but rather the decision was made not to pursue a DNA

defense.” Movant alleges that the motion court misread the testimony from Movant’s first post-

conviction hearing.

 After reviewing the record, we find that the motion court did not clearly err in concluding

that Movant and his trial counsel strategically declined to request independent DNA testing at

trial. “[T]he decision not to request DNA testing [is] a matter of reasonable trial strategy.”

Matney, 110 S.W.3d at 875. Here, Movant and his trial counsel knew they could have requested

reliable, independent DNA testing and simply elected not to pursue it further. They also knew

the results of the prior DNA testing conducted in this case, with Movant’s trial counsel

specifically acknowledging in Movant’s previous post-conviction relief motion that the DNA

testing results neither incriminated nor exculpated Movant. Movant’s trial counsel testified as

follows at his first post-conviction proceeding:

 Q [Prosecutor]: So [the DNA] did not incriminate him[,] but it did not exculpate
 him either?

 10
 A [Trial Counsel]: Yeah, that’s right. I mean I don’t think it was our strongest
 theory to go with trying to play around with, well, it could have been, it couldn’t
 have been, but we had a definite theory of [eyewitness] ID. Certainly the DNA
 did not hurt us which was good. It did not help us though[,] certainly not as much
 as many of the problems with the identification by the girl[,] which is what our
 theory was all along.

This testimony shows that Movant and his trial counsel felt that they had better strategic options

than pursuing independent DNA testing. This does not entitle Movant to relief. See State v.

Fields, 517 S.W.3d at 556 (“assuming, arguendo, DNA testing technology was not reasonably

available to Movant at the time of Movant's trial, Movant still fails to satisfy prong (a) of

element (3) of Section 547.035.2, in that the abstention of DNA testing was a matter of trial

strategy”). While we agree with Movant that misidentification and DNA defenses do not

necessarily contradict, nothing requires a defendant to pursue them in tandem. Here, the fact

remains that, despite its availability, Movant and his trial counsel chose not to pursue

independent DNA testing, electing instead to pursue a misidentification defense by other means.

 Point II is denied.

 V. Conclusion

 For the reasons stated above, we affirm the judgment of the motion court.

 _______________________________
 Kelly C. Broniec, Judge

Colleen Dolan, P.J. and
Robert M. Clayton III, J. concur.

 11