

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI, )
)
Respondent, )
) WD85603
v. )
) OPINION FILED:
) September 26, 2023
JOHN W. CAUDILL, )
)
Appellant. )

**Appeal from the Circuit Court of Nodaway County, Missouri**
**The Honorable Corey K. Herron, Judge**

**Before Division One:** Anthony Rex Gabbert, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

Mr. John Caudill ("Caudill") appeals *pro se* from the judgment of the Circuit

Court of Nodaway County, Missouri ("motion court"), denying his motion for

post-conviction DNA testing without a hearing. We affirm.

## Factual and Procedural Background[1]

On April 23, 1992, a jury found Caudill guilty of murder in the second degree,

armed criminal action, and robbery in the second degree. He was sentenced to life

---

[1] "A motion for DNA testing, as authorized by section 547.035, is a
post-conviction motion." *State v. Cox*, 563 S.W.3d 801, 804 n.1 (Mo. App. W.D. 2018)

imprisonment for the murder charge, life imprisonment for the armed criminal action charge, and thirty years' imprisonment for the robbery charge, with all sentences to run consecutively. Caudill appealed from his convictions and the sentences imposed as well as from the denial of his Rule 29.15 motion, and this Court affirmed the judgments entered against him. *State v. Caudill*, 879 S.W.2d 566 (Mo. App. W.D. 1994) (mem.).

On April 8, 2022, Caudill filed his *pro se* Motion for Post-Conviction DNA Testing ("Motion") pursuant to section 547.035.[2] Caudill stated that, prior to his trial, DNA testing available at the time was conducted on a sample of blood taken from his shoe, which sample was depleted in the analysis. The DNA test results were inconclusive. Caudill alleged that during the investigation of the crimes for which he was convicted, law enforcement officers seized certain items—specifically, a Lucky Strike cigarette carton, an Easters Grocery sack, a green shirt, Marlboro cigarettes, the victim's blouse and underwear, and the victim's rape kit—that were not subject to DNA testing but that may be subject to DNA testing under current methodologies not available at the time of trial. He requested that the motion court issue a show cause order to the State as to why those items should not be tested to determine whether DNA evidence excluded him as the victim's assailant.

_____

(citing *Weeks v. State*, 140 S.W.3d 39, 43 (Mo. banc 2004)). "On appeal from the denial of post-conviction relief, we view the facts in the light most favorable to the motion court's judgment." *Id.* (citing *Rousan v. State*, 48 S.W.3d 576, 579 (Mo. banc 2001)).

[2] All statutory references are to the REVISED STATUTES OF MISSOURI 2000, as supplemented.

2

On April 19, 2022, the motion court issued an Order to Show Cause ("Order") to the Nodaway County Prosecuting Attorney. The motion court noted in the Order that Caudill's Motion was not made under oath as required by section 547.035 and instructed him to refile his Motion under oath within thirty days of the Order or risk denial. On April 29, 2022, Caudill refiled his Motion, adding that "Movant states the following under oath." The State responded to the Order, arguing that Caudill's motion should be denied because: (1) it did not satisfy section 547.035.2 because it was not properly sworn in that it contained no jurat stating when, where, and before whom it purportedly was sworn; (2) he failed to allege facts sufficient to show that he was entitled to testing in that he failed to allege that the evidence sought to be tested was retained since his 1992 trial or that DNA testing on the items would have exonerated him; and (3) the record conclusively refuted the motion, given the items could have been DNA tested at the time of trial, and the overwhelming evidence linked Caudill to the crime—including his confession to two people, possession of the victim's property, and serology testing that suggested the victim's blood was on a shoe in Caudill's home. The State requested that the motion court deny Caudill's Motion without a hearing.

On July 29, 2022, the motion court entered its judgment denying the Motion, without a hearing, finding that Caudill failed to comply with section 547.035's requirement that the Motion be filed under oath and that even if the Motion had been properly sworn, it failed to establish entitlement to the relief sought.

Caudill timely appealed from the motion court's July 29, 2022 judgment. Additional facts relevant to the disposition of this appeal will be set forth in the analysis of the points to which they relate.

**Standard of Review**

"We review a circuit court's rulings on motions for post-conviction DNA testing under the same standards applied in post-conviction proceedings under Supreme Court Rules 24.035 and 29.15." *Belcher v. State*, 364 S.W.3d 658, 662 (Mo. App. W.D. 2012) (citing *Weeks v. State*, 140 S.W.3d 39, 44 (Mo. banc 2004)). Accordingly:

> Denial of a post-conviction motion for DNA testing is reviewed to determine whether the motion court's findings of fact and conclusions of law were clearly erroneous. The motion court's findings and conclusions are clearly erroneous only if, after review of the record, the appellate court is left with the definite and firm impression that a mistake has been made. Where, as here, the motion is overruled without a hearing, this Court reviews the lower court's determination for clear error.

*Id.* (quoting *State v. Ruff*, 256 S.W.3d 55, 56 (Mo. banc 2008) (citations and internal quotation marks omitted)).

**Points I and II**

Caudill asserts in two points on appeal that the trial court clearly erred in denying his Motion without an evidentiary hearing and appointment of counsel, which deprived him of due process. In his first point, he contends that "he sufficiently addressed each and every averment 'qualification' pursuant to § 547.035." In his second point, he avers that "the motion court failed to identify in its findings of fact and conclusions of law any part of the files or records which would support the motion court's conclusions in

4

overruling Mr. Caudill's § 547.035 DNA testing motion."  For ease of analysis, we will address Points I and II together.

Section 547.035 provides for DNA testing for any person "in the custody of the department of corrections claiming that forensic DNA testing will demonstrate the person's innocence of the crime for which the person is in custody."  § 547.035.1.  In the motion, the prisoner must allege facts under oath demonstrating that:

(1) There is evidence upon which DNA testing can be conducted; and

(2) The evidence was secured in relation to the crime; and

(3) The evidence was not previously tested by the movant because:

(a) The technology for the testing was not reasonably available to the movant at the time of the trial;

(b) Neither the movant nor his or her trial counsel was aware of the existence of the evidence at the time of trial; or

(c) The evidence was otherwise unavailable to both the movant and movant's trial counsel at the time of trial; and

(4) Identity was an issue in the trial; and

(5) A reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing.

§ 547.035.2.  "In reviewing the adequacy of a pleading, the court assumes all allegations are true and liberally grants all reasonable inferences therefrom."  *Ruff*, 256 S.W.3d at 57.  "The adequacy of [Caudill's] motion must be considered in light of the purpose of section 547.035:  to provide inmates an opportunity to have potentially exculpatory DNA tests performed on evidence."  *Id*. at 58.  The movant has the burden of proving the allegations of the motion by a preponderance of the evidence.  § 547.035.6.  "If the court

finds that the motion and the files and records of the case conclusively show that the movant is not entitled to relief, a hearing shall not be held." *Id.* Here, the motion court denied Caudill's Motion without a hearing pursuant to sections 547.035.2(1), (3), and (5).[3] Whether or not a hearing is held, the motion court is required to issue findings of fact and conclusions of law. § 547.035.8.

Regarding the section 547.035.2(1) requirement that evidence exists upon which DNA testing can be conducted, Caudill alleges in his Motion that in 1991 law enforcement officers seized certain items in relation to their investigation of the crimes for which he was convicted. Caudill asserts the conclusory claim in his Motion that had DNA testing been performed on the items he identified and had the results of the DNA tests excluded him and the victim as matches, the items he identified would have shown that he was innocent of the charges against him. In the State's response to the Order, the State pointed out that Caudill's Motion "does not allege that any of the six categories of evidence sought to be tested were retained since [Caudill's] trial in 1992."

The motion court found that Caudill's Motion did not "establish that there *is* evidence upon which DNA testing could be conducted" as required by section 547.035.2(1), "only that such evidence *might* exist for testing." According to the motion court, while Caudill "showed certain items existed," he "at best presumed or implied they might contain 'touch' DNA" and be subject to DNA testing. "A § 547.035 movant's

---

[3] The motion court also found that Caudill's Motion was not made under oath as required by section 547.035. Because we address the substantive inadequacy of Caudill's motion under section 547.035, we will not address this procedural defect.

motion must allege facts demonstrating that evidence related to the charged crime exists, that it is available for testing, and that DNA testing may be performed on the evidence." *State v. Westcott*, 121 S.W.3d 543, 547 (Mo. App. W.D. 2003). Caudill failed to plead facts establishing that any of the items he identified had been retained since they were seized by law enforcement in 1991 or that they currently are available for testing. The motion court properly denied his motion on that ground. *Westcott*, 121 S.W.3d at 547.

For movant to prevail on a post-conviction motion for DNA testing, section 547.035.2(3) requires movant to allege facts demonstrating that the evidence was not previously tested by movant because, at the time of trial, either: (a) the technology for DNA testing was not reasonably available to the movant; (b) neither the movant nor his or her trial counsel knew of the evidence that the movant now seeks to test; or (c) the evidence movant now seeks to test was "otherwise unavailable" to movant and his trial counsel. The motion court found that Caudill's Motion did not establish any of the three grounds in section 547.035.2(3).

Regarding section 547.035.2(3)(a), Caudill stated in his Motion that in 1991, when law enforcement seized the items he identified, the Missouri State Highway Patrol Crime Laboratory in Jefferson City routinely performed a restriction fragment length polymorphism (RFLP) method of DNA analysis. He further stated that, subsequently, the polymerase chain reaction (PCR) technique and short tandem repeats (STR) analysis became available and routinely used by the State, both of which "are more sensitive and therefore results can be obtained with a smaller sample than it takes from the RFLP method of testing."

7

Under prong (a) of section 547.035.2(3), a movant must demonstrate "the technology for the testing was not *reasonably available*" to the movant at the time of trial. According to the Supreme Court of Missouri, "the test is a *subjective* one, subject to a *reasonable availability* standard, not a question of objective scientific feasibility." *Weeks*, 140 S.W.3d at 48. "Appropriately, upon a motion for post-conviction forensic DNA testing, our courts are instructed to examine that which was 'reasonably available' to the movant at the time of movant's trial, subject to a reasonable availability standard." *State v. Fields*, 517 S.W.3d 549, 554 (Mo. App. E.D. 2016) (citing *Weeks*, 140 S.W.3d at 48).

In *State v. Kinder*, 122 S.W.3d 624 (Mo. App. E.D. 2003), the movant sought PCR DNA testing rather than the RFLP technique that existed at the time of movant's trial. *Id*. at 631. Movant claimed on appeal that the technology was not reasonably available. *Id*. at 632. The Court rejected movant's claim, stating that "DNA testing was available and, in fact, used in the movant's original trial. It is true that PCR technology was not available; however, RFLP technology was available and was used. We perceive no legislative intent to allow serial retesting of evidence due to a change in DNA technology." *Id.* The Court observed that "[t]o so hold would upset the balance the legislature has struck, and allow a movant to claim that, with every new technology or new refinement thereof, he had a right to retest the evidence."[4] *Id*. "Such an

---

[4] In *State v. Kinder*, 122 S.W.3d 624 (Mo. App. E.D. 2003), the Court interpreted the legislature's intent in enacting section 547.035:

interpretation of the statute could result in repeated requests for DNA retesting, thereby preventing a conviction from ever becoming final." *Id.*

Here, the motion court noted that the record indicated that DNA testing procedures existed prior to trial and that DNA testing was actually conducted on a sample of blood taken from Caudill's shoe prior to trial. Caudill's Motion established that DNA testing technology was available and in common use by the State at the time of his trial. Caudill's motion thus failed to allege compliance with option (a) of section 547.035.2(3).

In Caudill's Motion, he states that the evidence he now seeks to have tested for DNA "was secured by law enforcement as evidence in the crime, and was presented at trial." Caudill does not assert that he or his trial counsel was not aware, at the time of his trial, of the evidence he now seeks to have tested for DNA. § 547.035.2(3)(b). Nor does

---

The statute allowing for post-conviction DNA testing embodies the legislature's balancing of competing interests. There is, on one hand, a legitimate concern with the need for finality of a conviction. On the other hand, there rests real concern that DNA technology could produce exonerating results. The legislature has struck a balance and decided to allow for post-conviction testing, but only under limited circumstances.

The legislature has decided only three reasons might justify a defendant's failure to test the evidence at his original trial. If the technology was not reasonably available, if there was no awareness of the evidence's existence, or if the evidence was then otherwise unavailable, the defendant's failure to test might be excused. The legislature has not evinced any intent to otherwise allow for testing. If a defendant chose not to test evidence for a reason other than those statutorily denominated, the statute affords no relief.

*Id.* at 631-32.

he assert that the evidence was otherwise unavailable to him or his trial counsel at the time of trial. § 547.035.2(3)(c).

"To be entitled to post-conviction DNA testing, a movant must allege facts demonstrating one of the three alternative justifications set out in the statute as to why he or she did not previously test the evidence." *Fields*, 517 S.W.3d at 558 (internal quotation marks omitted). Caudill failed to do so in this case. "The limited circumstances established by the legislature to justify a failure to test are absent here. Accordingly, the movant was not entitled to either a hearing or testing." *Kinder*, 122 S.W.3d at 634. Because Caudill's motion failed to allege compliance with either prongs (a), (b), or (c) of element (3) of section 547.035.2, the trial court did not clearly err in denying his post-conviction motion for DNA testing.

Finally, under section 547.035.2(5), the motion must allege facts demonstrating that "[a] reasonable probability exists that the movant would not have been convicted if exculpatory results had been obtained through the requested DNA testing." In Caudill's Motion, he made the conclusory statement that "[h]ad the requested DNA testing been performed on the above items and the results of the DNA test been positive for an unknown match, but excluded Movant, and the victim as matches, it is reasonably probable that Movant would not have been convicted."

The State responded to Caudill's Motion with an itemization of overwhelming evidence of Caudill's guilt, and Caudill did not dispute the State's itemization of the

inculpatory evidence; thus, the motion court incorporated such inculpatory evidence[5] in

its judgment, to-wit:

- Law enforcement recovered a pair of tennis shoes from [Caudill's] home, and one of the shoes had a blood stain on the tongue. (Tr. 216, 220-21, 271.) [Caudill] took the stand and identified the shoes as belonging to him. (Tr. 421.) Although DNA testing of the blood stain was inconclusive, . . . a forensic serologist for the Highway Patrol, testified that the enzymes detected in the blood conclusively excluded [Caudill] as a source and conclusively matched the victim's enzyme profile. (Tr. 270-79.)

- A silver dollar dated 1878 and a jar were found in [Caudill's] home that had been kept in the victim's home. (Tr. 216, 218-20, 283, 312-14.) A pawn shop owner identified [Caudill] at trial and testified that [Caudill] sold him several coins but kept the specific silver dollar dated 1878. (Tr. 31[5]-17.) [Caudill] admitted at trial that he sold these coins under a fake name. (Tr. 411, 42[2].) [Caudill's] girlfriend at the time, testified that he sold all but one of the coins on September 10, 1992 (the day of or after the murder). (Tr. 325-26.) The victim's husband identified the coins that were sold and the 1878 silver dollar found in [Caudill's] home as belonging to him,

---

[5] In *Gaddis v. State*, 121 S.W.3d 308 (Mo. App. W.D. 2003), we stated:

If the motion court had adopted, by reference, the State's motion to dismiss as its findings of fact and conclusions of law, its order would not have been, per se, clearly erroneous. *Leady v. State*, 714 S.W.2d 221, 222 (Mo. App. [E.D.] 1986). The Eastern District of this court disapproved of this practice, however, by stating that "[t]he preferable practice is for the trial court to prepare its own findings of fact and conclusions of law so as to better insure that all issues raised are addressed and that erroneous allegations of fact or law made in a State's motion are not incorporated into a court order." *Id.* Nevertheless, the principle that it is not error per se to properly adopt the State's motion to dismiss might have aided the motion court in this case, if it had adopted by reference the State's motion to dismiss as its findings of fact and conclusions of law. It did not.

*Id.* at 312 (second alteration in original). The same is true in the present case. The motion court here did more of its own analysis than the legally permissible minimum of adopting the State's response verbatim.

and he testified they were kept in the jar that was recovered from [Caudill's] home. (Tr. 222, 312-14.)

- The jar that was recovered also contained (1) a key that unlocked a padlock on the victim's garage door and (2) a unique item—a chain with a locket, compass, and other items that the victim's step-mother gave to the victim three years prior. (Tr. 219, 223-24, 309-10.)

- [Witness One] testified that [Caudill] told him he had killed the victim with her own flashlight, and he testified about specific information as to her location and the manner in which the crime occurred. (Tr. 233-38.) According to [Witness One's] testimony, [Caudill] told him he took a jar full of coins and showed him a silver dollar coin. (Tr. 235, 239-40.) [Witness One] reported this to law enforcement, who were able to locate and recover the victim's body at the site described by Caudill to [Witness One].

- This was corroborated by the testimony of [Witness Two], who was [Caudill's] girlfriend at the time. [Witness Two] testified that [Caudill] confessed to her; told her about the coins and the jar he had taken from the victim's home; told her how he beat the victim with a flashlight, which was consistent with the cause of death (Tr. 305); told her during the murder he was wearing the tennis shoes recovered by police; told her to get rid of the thongs/flipflops he changed into after the murder; and told her where the murder occurred, which was consistent with where [Witness One] told law enforcement [Caudill] said the body was. (Tr. 326-33.)

After incorporating these inculpatory facts in its judgment, the motion court additionally itemized other undisputed facts regarding evidence of Caudill's guilt; then, the motion court detailed its conclusion that Caudill's Motion did not allege facts sufficient to show how, even if DNA testing were done and DNA were found for someone other than himself on the items of evidence that may or may not presently be in existence, his innocence would be proven. Though "[a] mere recital or statement that the motion, files and records conclusively show that movant is entitled to no relief will not constitute compliance with [the post-conviction motion rule]," *Belcher v. State*, 299

12

S.W.3d 294, 296 (Mo. banc 2009) (second alteration in original) (internal quotation marks omitted), the motion court's findings and analysis in the present case demonstrate that its judgment goes well beyond a conclusory denial of Caudill's motion.

"Because the [motion] court's ultimate ruling depends on the probability of conviction if exculpatory results are obtained from DNA testing, the court must consider all evidence and is not barred from comparing the nature of that exculpatory evidence to the trial evidence." *State v. Prewitt*, 575 S.W.3d 701, 711 (Mo. App. W.D. 2019). In *Prewitt*, the primary type of DNA evidence movant sought was "touch DNA." *Id.* This Court found that the motion court did not clearly err in concluding that movant failed to establish that DNA testing would have created a reasonable probability of a different trial outcome given the wealth of evidence against movant, even if the requested DNA testing were to show redundant DNA profiles of an unknown individual. *Id.* Likewise, here, the motion court did not clearly err in concluding that, based on Caudill's Motion, the State's response, and the evidentiary record, it could not find that a reasonable probability existed that Caudill would not have been convicted if the DNA testing he sought were performed.

Points I and II are denied.

## Conclusion

The judgment of the motion court is affirmed.

_____
Mark D. Pfeiffer, Judge

Anthony Rex Gabbert, Presiding Judge, and Lisa White Hardwick, Judge, concur.